DELMAR W. HAMMOND, GUARDIAN, APPELLEE, V. JACOB KEIM, DOING BUSINESS AS KEIM CONSTRUCTION COMPANY, ET AL., APPELLANTS.

FILED JANUARY 30, 1935. NO. 29183.

*Sanden, Anderson & Gradwohl,* for appellants.

*Max G. Towle* and *Lester L. Dunn, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

PAINE, J.

This is a suit in which Delmar W. Hammond, as guardian and next friend, seeks to recover under the workmen's compensation law for the death of his father-in-law.

Immediately prior to May 26, 1930, on which date he received injuries which resulted in his death, Ed Linquist, hereinafter called the deceased, had been employed by Jacob Keim, doing business as Keim Construction Company, in superintending the construction of a building at Tecumseh, Nebraska, for which he was being paid $1.50 an hour. Deceased was a widower, and left one adult son and an adult daughter, being the wife of the plaintiff, two minor sons, and three minor daughters.

It is unusual to find the facts so little in dispute as they are in this case. On Saturday, May 24, 1930, shortly after noon, the deceased, with two other employees, George Holstein and Robert E. Lee, who also lived in Lincoln, left Tecumseh for Lincoln, where the three were to spend their week-end. Monday morning the deceased informed the other two that he had taken a new job of the construction of a building for Freadrich Brothers at University Place, which job he was to begin at once. He directed Holstein to take his place in completing the building at Tecumseh for the defendant, turning over to Holstein at the same time the defendant's books that he kept as foreman. He notified Lee that he wanted to employ him to start to work

with him at once upon this new job at University Place, and Lee accepted. He stated that he would go right at this new job, and would drive at once to Tecumseh to get his mortar-boxes, shovels, wheelbarrow, and tools, and bring them all back to University Place. Deceased got some rope, which he would need to tie the mortar-boxes onto the truck, and took a truck which he had contracted to buy. Before the deceased had left Tecumseh on Saturday afternoon, Jacob Keim, the defendant, had said that he would like to have certain stair-railing, and also some muriatic acid to wash down and clean the walls of the building about completed, and Keim had requested that the stair-railing and acid be ordered to be shipped by freight from Lincoln, the acid not being needed until late the following week. Lee ordered the stair-railing shipped by freight, and Holstein, who was to take the place of the deceased on the Tecumseh job, decided to drive his own car to Tecumseh, so he would have it to return when he had finished the job, and would have taken the acid down to Tecumseh in his own automobile, but, as it was a new car, and the upholstery would be ruined if the acid splashed, it was finally decided, as the deceased had to go down with his truck to get his tools, to load the jug of acid into the truck of the deceased.

After ordering the stair-railing at the Hedges foundry, the parties started for Tecumseh, with Holstein in his own car, accompanied by the deceased, and Lee driving the truck, in which Mr. Conner also rode. The deceased said they were driving his truck too fast, and had Holstein overtake them just out of Bennet, and the deceased then "bawled" Lee out for driving the truck too fast, and Lee then transferred to the car and deceased rode in the truck, with Conner behind the wheel, the truck following the car. The car and truck soon passed a road maintainer, and in getting back toward the center of the road the truck suddenly went in the ditch and rolled over. The deceased was injured, and was brought to a hospital in Lincoln, where he died.

Jacob Keim testified that he did not request the deceased to bring the acid to Tecumseh, but asked him to have it shipped to Tecumseh, and testified further that the deceased had nothing to do with furnishing material or delivering material, and that all of the other material for the job had been shipped down, and nothing had been hauled by the deceased.

It is insisted by appellants that a compensable injury can only arise while a workman is engaged in or about the premises where his duties are being performed, or where his service requires him to be at the time of the injury and during the hours of service as such workman, and that the accident must arise out of and in the course of the workman's employment. Comp. St. 1929, sec. 48-109.

"Personal injuries arising out of and in the course of employment" covers workmen only when engaged in, on, or about the premises where their duties are being performed, or where service requires their presence during their hours of service as such workmen. Comp. St. 1929, sec. 48-152.

Many cases can be found in other states which throw light upon the case at bar, even though the facts are somewhat different. Let us examine three of these.

In *Edmonds v. Industrial Commission*, 350 Ill. 197, a maid working in the Edmonds home at La Grange, Illinois, was given her Saturdays off after breakfast. On Saturday evening, as she was starting to go out to earn some extra money for herself by taking care of some children in another home, she fell downstairs in the Edmonds home and was injured. It was held that the accident did not arise out of or in the course of her employment, although Edmonds' daughter was ready to drive her over to this other place.

In *Matter of Marks v. Gray*, 251 N. Y. 90, the deceased was a young plumber's helper at Clifton Springs, New York. His wife was visiting relatives at Shortsville, and he had promised to go and get her after his work for the

day was completed. Learning of this, his employer asked him to take his tools along and fix some defective faucets in a dwelling in Shortsville, which work would take him less than 20 minutes. The deceased drove his own or his father's car, and not the plumbing truck, and was killed in a highway accident. He would have been paid for his time if he had fixed the faucets. Chief Justice Cardozo said in his opinion: "He was not making the journey to Shortsville at the request of his employer or for the purpose of doing his employer's work. * * * If word had come to him before starting that the defective faucets were in order, he would have made the journey just the same. * * * We hold that Marks was not placed upon the highway by force of any duty owing to his employer, and that the risk of travel was his own."

In *Barragar v. Industrial Commission*, 205 Wis. 550, a traveling salesman, while bringing his family back from a vacation, was killed in a highway accident. It was held not compensable, even though he had taken along some accounts of his employer for collection. This decision is based upon the ground that the employee's trip proceeded on his own business, and he was on that business when killed, and not on any detour occasioned by the master's business.

The situation is not entirely new in our Nebraska opinions. In *Pappas v. Yant Construction Co.*, 121 Neb. 766, it was held that, where an employee was injured while working upon his truck at his home, a considerable distance from the place of employment, his injuries did not arise out of and in the course of his employment.

In *Pensick v. Boehm*, 124 Neb. 28, this court held that the evidence did not establish that the claimant was in the employ of the defendants at the time of the alleged accident, the contract of employment having terminated on March 8, and the accident having occurred on March 11, 1931.

In the case of *Babcock v. School District*, 123 Neb. 491, Babcock, as superintendent of the Cedar Bluffs school,

made a trip to Omaha on Saturday in his own automobile, and while there ordered certain supplies for his school from the Omaha School Supply Company during the noon hour. He devoted the rest of the day to his own personal affairs, and the accident occurred at about 9:30 p. m. while he was driving home from Omaha, and it was held by this court that this evidence was insufficient to prove that the accident arose out of and in the course of his employment.

In *Hall v. Austin Western Road Machinery Co.*, 125 Neb. 390, it was held: "A compensable injury can only arise while the workman is engaged in, on or about the premises where his duties are being performed, or where his services require his presence as a part of such service at the time of the injury and during the hours of service as such workman."

Other Nebraska cases in point are: *Perry v. Johnson Fruit Co.*, 123 Neb. 558; *Siedlik v. Swift & Co.*, 122 Neb. 99; *Kresl v. Village of Dodge*, 121 Neb. 882.

The appellee cites, in support of the judgment he obtained, *Speas v. Boone County*, 119 Neb. 58, and *Struve v. City of Fremont*, 125 Neb. 463. These cases are not controlling in the case at bar, where the evidence clearly shows the deceased had terminated his employment.

In a late case two young employees of a department store, planning a social trip to a near-by town on Sunday, were asked by the manager to bring certain goods back from the warehouse. The court made a distinction between the primary purpose of their trip and the bringing of the goods, which was merely incidental, and held that the deaths of the two employees did not arise out of and in the course of their employment, it being obvious, said Justice Adams, that from Saturday night until Monday morning the relation of employer and employee was terminated. *Ridout v. Rose's Stores*, 205 N. Car. 423.

In the case at bar, the deceased had entered upon a new job energetically, and was engaged in a trip to get his tools for that purpose. The mere fact that, through a

combination of circumstances, he happened to have some acid belonging to his former employer in the truck at the time of the accident does not reestablish the former relationship between them. Deceased would not have made the trip if someone else had brought his tools to University Place, but he would have made the trip just the same if the acid had not been placed in his truck. The primary purpose of this trip was to bring the tools of the deceased, in which his former employer had no interest.

We are not unmindful of the great loss suffered by the orphaned children in the accidental death of their father, and sincerely deplore it, but we feel compelled to hold that the compensation law, even when very liberally construed in the interests of the plaintiff and those represented by him, does not provide for payment under the undisputed facts in this case. The judgment of the trial court is reversed, and the action dismissed.

REVERSED AND DISMISSED.