ALICE MARTIN, PETITIONER-RESPONDENT, v. HAS-
BROUCK HEIGHTS BUILDING LOAN AND SAVINGS
ASSOCIATION, RESPONDENT-PROSECUTOR.

Submitted January 16, 1945—Decided April 2, 1945.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and
PERSKIE.

For the prosecutor, *Cox & Walburg* (*William H. D. Cox*
and *Harry E. Walburg,* of counsel).

For the respondent, *Chandless, Weller & Kramer* (*Julius
E. Kramer,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a workmen's compensation case. *R. S.*
34:15–1, *et seq.* It presents the usual question, namely, did
the accident which resulted in the death of petitioner's hus-
band arise out of and in the course of his employment?

In the Workmen's Compensation Bureau and in the Bergen County Court of Common Pleas the posed question was answered in the affirmative. We, who do not "lightly disturb" a result reached by the stated independent tribunals, give like answer. *Cf. Berlinger* v. *Medal Silk Co.,* 113 *N. J. L.* 476, 477; 174 *Atl. Rep.* 558.

Admittedly, the "evidence is not in dispute." On November 25th, 1941, about 5:30 P. M., Will D. Martin, seventy-two years of age, petitioner's husband, was struck by an automobile, operated by a third party, on Terrace Avenue in the Borough of Hasbrouck Heights, New Jersey, while walking from his employer's office (250 Boulevard) to his home (16 Alger Street) in the borough. As a result thereof, Martin died the following morning about 3:00 A. M.

At the time of the accident, and for about forty-five years prior thereto, decedent was secretary of the prosecutor, hereafter referred to as Association. He had no fixed hours at the office of the Association which was open from 9:00 A. M. to about 6:00 P. M. In the earlier days of employment by the Association up to and about the time of World War number one, the office of the Association was in the home of the decedent. Thereafter, although the Association had opened an office elsewhere, decedent performed a goodly portion of his secretarial duties at his home pursuant to prior custom and with the express or implied knowledge and acquiescence of the Association. It maintained an extension of its office telephone at decedent's home. When the telephone bell rang in the office of the Association it was so arranged that it also rang in the home of the decedent. It was his custom to make and keep appointments at his home with those having business with the Association to suit their convenience whether it was during the day or the evening. He would, among other things, receive rents and dues at his home and issue receipts therefor; and he would also arrange for necessary repairs to properties belonging to the Association.

The Association was in the process of perfecting a proposed plan of re-organization. Its acceptance depended, *inter alia,* upon the consent of ninety per cent. of the stockholders. The Association agreed to submit its proposed plan to the State

Banking Commissioner by November 26th, 1941. Action by the Association on its proposed plan was scheduled for its meeting on the evening of the day of the accident. Decedent planned to attend that meeting "and to take care of closing a title" at 7:30 P. M., prior to the meeting.

Decedent took an active part in perfecting the proposed plan of re-organization and of obtaining the necessary consents thereto. For the primary purpose of enlisting her co-operation and support of, and consent to, the proposed plan, and of inducing her to purchase additional shares in the Association, he specifically arranged an appointment with his sister-in-law, the holder of matured shares of the Association, at his home between 5:00 and 6:00 P. M. of the day of the accident. She was on hand. Decedent had further arranged an appointment at his home with a roofing contractor, and fixed the time between 6:00 and 6:30 P. M. Some of the properties of the Association presumably were in need of repairs. The roofer was on hand. Decedent, who left the office of the Association some little time after 5:00 P. M., to walk to his home, a distance of four and one-half city blocks, was not on hand. While en route he suffered the fatal accident in issue.

Pursuant to his customary habits, decedent was expected at his home for his dinner about 5:30 P. M. Because of this circumstance, it is argued that the accident did not arise out of and in the course of his employment. That argument is bottomed on the premise here, as it was below, that decedent's homeward journey was purely personal and that he would have made that journey (*i. e.,* to go home and eat his dinner) regardless of the business appointments. Otherwise stated, the argument, in substance, is that the major cause for decedent's homeward journey was to eat his dinner and that his scheduled business appointments were merely incidental. These arguments are based upon the holding in the case of *Pilkington* v. *New Jersey State Highway Department,* 124 *N. J. L.* 11; 10 *Atl. Rep.* (2d) 489; *affirmed,* 125 *N. J. L.* 444; 15 *Atl. Rep.* (2d) 636, and *Clegg* v. *Interstate Insurance Co.,* 130 *N. J. L.* 307; 32 *Atl. Rep.* (2d) 570.

Those cases are clearly distinguishable. In the Pilkington

case the employee "was not on the highway by force of any duty owing to his employer" but "in consequence of his own purpose to attend the social affair" and thus it was held that the employee had not met with an accident arising out of and in the course of his employment.

In *Clegg* v. *Interstate Insurance Co., supra,* the employee left his assignment in Nanuet, New York, and "went approximately thirty-five miles beyond any point where the business of his employer required him to be, in order to keep a previously made personal engagement," thus it was found as a fact that he had then "abandoned his employment."

In both the Pilkington and Clegg cases, the court had for its consideration and determination the legal effect of the facts and circumstances relating to the accident in issue without more. In the case at bar, the facts and circumstances relating to the accident in issue are not so circumscribed. Here we have in aid of our consideration and determination of the accident the facts and circumstances relating thereto plus a relationship, a course of conduct, between the parties which had continued for almost half a century without question and with benefit to the Association, to its patrons, and to the decedent. We are not obliged to speculate on whether the decedent might have eaten his dinner before he fulfilled his engagements. Nor are we obliged to speculate concerning whether decedent would have made the journey to keep his business appointments if he had canceled his dinner engagement. For the fact is that he neither canceled his dinner nor his other appointments. Had he intended to cancel either he undoubtedly would have done so. And the proofs are plenary in support of the fact that decedent was on his way home at the time of the accident. Here there was no deviation in his homeward journey. And the interval between the time decedent left the office and the time of the fatal accident did not effect any change in the relation of master and servant which existed between the decedent and the Association. Here also there was no abandonment of that relationship.

Nor do we deem it of particular moment that decedent might have made the appointments with his sister-in-law and the roofer at the office of the Association. In appraising that

circumstance we conclude that both engagements made by the decedent were for the benefit of the Association, especially the one which decedent made with his sister-in-law. Thus the situation, in our view of the case, is no different than if decedent had left the office of the Association to go for instance to the home of the roofer on the business of the Association and while on that mission had the intention (either before or after finishing with the roofer) of eating his dinner. The continued practice, the custom of decedent, extending for about half a century, in using his home for transacting the business of the Association, with its knowledge and acquiescence (*Micieli* v. *Erie Railroad Co.*, 130 *N. J. L.* 448, 452), for the benefit of the Association, its patrons and decedent, are tantamount, in the legal sense, to an authorization to decedent so to use his home.

We are not unmindful of the line of cases of which *Gullo* v. *American Lead Pencil Co.*, 119 *N. J. L.* 484; 196 *Atl. Rep.* 438, and *Grady* v. *Nevins Church Press Co.*, 120 *N. J. L.* 351, 355; 199 *Atl. Rep.* 578, are typical and which hold that as a general rule compensation is not awarded to a workman for injuries resulting from accidents happening while on his way to or from work. But this rule is not without exceptions. *Cf. Rubeo* v. *Arthur McMullen Co.*, 117 *N. J. L.* 574; 189 *Atl. Rep.* 662; same case, 118 *N. J. L.* 530; 193 *Atl. Rep.* 797; *affirmed*, 120 *N. J. L.* 182; 198 *Atl. Rep.* 843; *Micieli* v. *Erie Railroad Co.*, 130 *N. J. L.* 448; 33 *Atl. Rep.* (2d) 586; *affirmed*, 131 *N. J. L.* 427; 37 *Atl. Rep.* (2d) 123. And the Pilkington case and the Clegg case, based upon the holding of the Court of Appeals of New York in *Mark's Dependents* v. *Gray*, 251 *N. Y.* 90; 167 *N. E. Rep.* 181, 183, opinion by Cardozo, C. J., adopted a further exception to the general rule. That exception is that the service to the employer need not be the "sole cause" of the journey, but it must at least be a "concurrent cause." The test of liability, under this exception, is that the "inference must be permissible that the trip would have been made though the private errand had been canceled."

Thus even if it be assumed that the service which decedent had planned to render for the Association in the two engage-

ments was not the "sole cause" of his homeward journey, such service was surely a "concurrent cause." We so find as a fact.

We are of the opinion that the "admitted" proofs, and all legitimate inferences to be drawn therefrom, and the preponderance of probabilities (*Gilbert*[1] v. *Gilbert Machine Works, Inc.*, 122 *N. J. L.* 533, 535; 6 *Atl. Rep.* (2*d*) 213) establish the fact that decedent, on his homeward journey, at the time of his fatal accident was serving the Association; that such service was, at least, a "concurrent cause" for his trip home; and these proofs further preponderate the probability, according to the common experience of mankind, that decedent would have made the journey to keep his business appointments at his home for the Association even if he had canceled his dinner. In short, the proofs establish the tendered hypothesis, namely, that decedent's fatal accident arose out of and in the course of his employment.

The writ is dismissed, with costs.