## 35160. ALLSTATE INSURANCE COMPANY *et al. v.* PHOENIX.

DECIDED JUNE 24, 1954—REHEARING DENIED JULY 30, 1954.

*Marshall, Greene & Neely,* for plaintiff in error.

*Dunaway & Embry,* contra.

FELTON, C. J. The deceased was employed by Allstate Insurance Company as assistant claims manager and division supervisor. The company's Atlanta office is the home office for eight southeastern States. Those States are divided into two divisions, the western division consisting of Tennessee, Alabama, Kentucky and Mississippi. The deceased was supervisor of the western division. While the deceased traveled into the States of his division on company business, the bulk of his employment activities was performed in the Atlanta office. Sometime during the week ending February 21, 1953, the deceased went to Mobile, Alabama, on company business. On Friday, February 20, the deceased flew from Mobile to Tampa, Florida, where he was met by his wife, son, mother and father. The family then motored to Palmetto, Florida, to spend a part of the weekend with the deceased's parents. On Sunday morning, February 22, the deceased, his wife and son were motoring from Palmetto to Tampa

when they were involved in a collision in which the deceased was killed. The defendants contend that the death did not grow out of the deceased's employment and that the Georgia Workmen's Compensation Board did not have jurisdiction of the claim.

■ The evidence authorized the finding that the deceased was within the scope of his employment at the time he was killed. He had completed his visit with his parents and was on his way back to Atlanta via Tampa. He was to stop in Tampa and make a business call on the company's Tampa office. While the Tampa office was not within the deceased's division, Mr. W. S. Berdal, the company's claim manager in the Atlanta office and the deceased's immediate superior, testified that the deceased was expected to make a "morale call" on the Tampa office while he was in that vicinity, even though that office was not in the deceased's division. He further testified that such calls were common practice and were expected of the division supervisors by him. When the deceased was planning his trip to Mobile, he discussed his plans of meeting his family and visiting his parents in Palmetto with Mr. Berdal. They arranged for the deceased to receive the cash equivalent of his return airline trip from Mobile to Atlanta in order to help defray the expenses of the Palmetto trip. They also discussed the deceased's plan to call on the Tampa office. We think the evidence authorized a finding that at the time the deceased was killed he was within the scope of his employment and was on his way to Tampa to make a business call on the Tampa office according to company practice and specific arrangements with his immediate superior.

■ The claimant and her son testified that on the morning of Sunday, February 22, 1953, the deceased told them that he wanted to get started in that he wanted to stop in Tampa and see the company's district claims manager. The defendant objected to the introduction of such testimony on the ground that it was hearsay. The director properly admitted the testimony. The conversation was introduced to explain the deceased's conduct and motives on the morning of his death and was admissible as original evidence. Code § 38-302; *Southern Ry. Co.* v. *Tudor*, 46 *Ga. App.* 563, 574 (5) (168 S. E. 98).

■ The remaining question for determination is whether the Georgia Board of Workmen's Compensation had jurisdiction to

entertain the claim. If visiting the Tampa office was in connection with the deceased's Georgia employment activities, the board had jurisdiction. *Slaten* v. *Travelers Ins. Co.,* 197 *Ga.* 1 (28 S. E. 2d 280) ; s.c., 70 *Ga. App.* 665 (29 S. E. 2d 98) ; *Fidelity & Casualty Co.* v. *Swain,* ante. In the instant case the deceased's original employment agreement with the company was not made in Georgia but his employment status was changed while he was in the company's employment in Georgia. Since we are deciding that the board had jurisdiction of the claim because the deceased's visit to the Tampa office was in connection with his Georgia employment activities, it is not necessary to decide whether by virtue of the change of the deceased's employment status while in Atlanta a new contract of employment was entered into.

Most of the deceased's employment activities and duties were performed in the Atlanta office. This employment constituted his general employment with the company, and under the facts of this case we do not think you can separate any of the deceased's specific employment activities from his general employment in Georgia. The evidence showed that office procedure in the Atlanta Office constituted the bulk of the deceased's duties with the company and that trips into his territory were to occasionally supervise the company's activities there and to handle specific instances of important claims in which his company had an interest. For the deceased to properly perform his Georgia employment duties these trips were necessary. He did not have any Florida employment duties and he was not to make the Tampa call as a separate or special employment duty. The Tampa call was connected with the deceased's general employment with the company, and since his general employment was his Georgia employment, it follows that his business call on the Tampa office manager was in connection with his Georgia employment. *Fidelity & Casualty Co.* v. *Swain,* supra.

The court did not err in affirming the full board's award.

*Judgment affirmed. Quillian and Nichols, JJ., concur.*