73 N.J. Super. 193 (1962)
179 A.2d 551
VERONICA E. NEUMEISTER, PETITIONER-RESPONDENT,
v.
EASTERN BREWING CORPORATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1961.
Decided January 29, 1962.
*194 Before Judges GAULKIN KILKENNY and HERBERT.
Mr. A. Millard Taylor argued the cause for the appellant.
Mr. William G. Freeman argued the cause for the respondent.
*195 The opinion of the court was delivered by GAULKIN, J.A.D.
This is a workmen's compensation case. John F. Neumeister, Eastern's brewmaster, was killed while driving his own automobile from his home in New Britain, Connecticut to the brewery in Hammonton, New Jersey. The Judge of Compensation and the County Court held that his death was compensable. The employer appeals.
There is little dispute in the facts. Eastern had hired Neumeister as brewmaster in December 1955, for a six months trial period. Since it was for a trial period, Neumeister did not move his family from Connecticut to Hammonton, and Eastern supplied him with an apartment near the brewery. Neumeister was in control of and had the responsibility of the brewing process, but under the supervision of James Penza and Ernst Adler. Brewing is a continuous and uninterrupted process. Adler said that "in order to have a uniform product it is practically a 24 hour a day job." Ordinarily Neumeister worked from about 6 A.M. to about 4:30 P.M., but whenever necessary he worked longer hours or in the evening. As a rule he was able to visit his family in Connecticut on weekends, leaving Saturday afternoon and departing from Connecticut on Sunday evening. In addition, whenever he had to go to New York City for yeast, or to Schwarz Laboratories, Inc. (Schwarz), Eastern's consultant chemists, in Mt. Vernon, New York, Neumeister was permitted to visit with his family in Connecticut before returning to Hammonton. Neumeister used his own automobile on these trips, but when he went to New York City or Mt. Vernon on Eastern's business (even when the trip was coupled with a trip to visit his family) Eastern provided gasoline and reimbursed him for toll charges.
During the week before Good Friday 1956 two batches of the brew became hazy or cloudy. Penza and Adler became alarmed and, on Thursday, March 29, they dispatched Neumeister to Schwarz Laboratories with samples of the brew, with instructions to stay there until the samples *196 were analyzed, to discuss with Schwarz what was to be done to correct the condition, and to report back to Adler by telephone. Schwarz was described by Adler as "one of the leading brewing laboratories in this country * * * It has a brewing school * * * They also produce certain materials and ingredients used in brewing * * *."
Adler and Penza knew that Neumeister planned to spend the Easter week end with his family. Mrs. Neumeister testified that he told her that he might be home Thursday (Holy Thursday, in the Neumeister's faith) "it all depended on what he had to do." Before Neumeister left Hammonton for Schwarz Laboratories he filled the tank of his car with Eastern's gasoline, with Eastern's permission, and it is not disputed that Eastern was to pay the highway and bridge tolls. Counsel for Eastern argues that the evidence shows that the agreement was to pay only the tolls to Mt. Vernon, but not back to Hammonton. We find the testimony more susceptible to the construction that tolls both ways were to be paid by Eastern. The Judge of Compensation and the County Court Judge, in their able opinions, seemed to so construe the testimony, and we would so construe it. However, even if indeed the testimony is not clear enough to justify an express finding that the tolls both ways were to be paid by Eastern, it would not change our decision.
Schwarz analyzed the brew and advised the addition of gypsum and a diastatic enzyme called "convertase" to the brew. It is not clear from the testimony whether the gypsum and the convertase were to be added to both batches of cloudy brew or whether gypsum was to be added to one and convertase to the other. In any event, the gypsum was to be added at the rate of two pounds to every one hundred barrels of brew, while the convertase was to be added at the rate of seven ounces to every one hundred barrels. Gypsum is a common substance, but apparently convertase is not, for Schwarz gave Neumeister two pounds of the convertase to take back with him.
*197 From Mt. Vernon, Neumeister went on to Connecticut. Adler had expected Neumeister to telephone from Mt. Vernon and, when he did not, Adler telephoned him in Connecticut. Neumeister told Adler of Schwarz's recommendations. Adler testified that "I asked him whether he could arrange it so that he leaves Sunday, or stays over in Hammonton, to be at the Brewery very early at 6:00 o'clock" on Monday to carry out Schwarz's instructions. Adler added, in his testimony, "Normally I would feel, it being Easter Sunday, he should spend the night home and come in Monday morning. But this particular time I would not say I instructed him that that was not the relationship. I just suggested to him that wouldn't it be better he started as early as possible on Monday morning so that he does not lose any time." Adler instructed the brewery that the carrying out of Schwarz's instructions should be done only "under Mr. Neumeister's supervision and that he should be there from the beginning when that was done."
Neumeister left Connecticut Sunday evening about 8 P.M., with the convertase. At about 1:30 A.M. Monday he was killed when his car collided with another a few miles from Hammonton. At the time of the accident he was on the road which he would have followed had he been traveling from Mt. Vernon to Hammonton.
Defendant argues that when Neumeister left Schwarz Laboratories "the employment errand had been fully completed, and thereafter the decedent was on his own and was not within the sphere of his relationship." In substance, the employer's argument is that Neumeister was going to Connecticut for the Easter week end; that if he had not stopped at Schwarz Laboratories no claim could have been made for any injury sustained while he was driving to or from his home in Connecticut (Moosebrugger v. Prospect Presbyterian Church, 12 N.J. 212 (1953)); and that assuming an injury en route to Schwarz would have been compensable, when he completed his errand at *198 Schwarz and continued on his way to Connecticut he was no longer in the course of Eastern's employment and any injury suffered between Mt. Vernon and Connecticut, or on his way back from Connecticut to Hammonton, was not in the course of his employment and hence not compensable.
We disagree. Whenever Eastern sent Neumeister to New York, or to Schwarz at Mt. Vernon (over 116 miles from Hammonton), the trip to New York or to Mt. Vernon and back to Hammonton was in the course of Neumeister's employment. Assuming that Neumeister departed from the scope of his employment, on an errand of his own, whenever he left New York or Mt. Vernon to visit his family in Connecticut, and while he was in Connecticut, that departure from the employment was ended when he returned to the road which he would have followed had he proceeded from New York or Mt. Vernon directly to Hammonton. Robinson v. Federal Telephone & Radio Corp., 44 N.J. Super. 294, 297 (App. Div. 1957); Sanford v. Charles H. Totty Co., 110 N.J.L. 262 (E. & A. 1932). Of course "it is quite possible * * * for an employee * * * to complete his business errand and then embark on such a series of personal activities that the identity of the return business trip would be lost in the process, as it apparently was in Mr. Dooley's case [Dooley v. Smith's Transfer Co., 26 N.J. Misc. 129, 57 A.2d 554 (Dept. Labor 1948)] when his normally-covered homeward trip from work lost its covered character by being deferred until the middle of the night." 1 Larson, The Law of Workmen's Compensation, § 19.29, p. 274. And see Clegg v. Interstate Insurance Co., 130 N.J.L. 307 (Sup. Ct. 1943). However, that was not the situation here.
The fact that Neumeister would have gone to Connecticut anyway is immaterial. Martin v. Hasbrouck Heights Building Loan and Savings Association, 132 N.J.L. 569 (Sup. Ct. 1945); Bradley v. Danzis Pharmacy, 5 N.J. Super. 330, 332 (App. Div. 1949); Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181 (Ct. App. *199 1929). The interruption of the employment to go to Connecticut was with the employer's knowledge and consent, and, in the light of that consent and of all the attendant circumstances, the deferment of the return trip until Sunday was not so substantial a departure from the employment as to make Neumeister's "normally-covered homeward trip * * * [lose] its covered character by being deferred * * *" for the week end. Had Neumeister been killed at the same point while returning from one of the one-day trips to New York or Mt. Vernon, above-mentioned, it could not be argued that the return trip was irretrievably without the scope of the employment simply because he had gone from New York or Mt. Vernon to Connecticut for a few hours with his family before returning to Hammonton. We perceive no difference between that situation and the one at bar. The mere fact that the interval was a week end instead of a few hours is, in our view, not a material difference.
Furthermore, if there were any doubt that the return trip was concurrently for the benefit of, and on an errand for, the employer, that doubt would be dispelled by the fact that Neumeister was bringing the convertase. Cf. Stehli v. Stehli, 62 N.J. Super. 117 (App. Div. 1960).
The judgment is affirmed.