HEINZ DOMBACH *v.* OLKON CORPORATION ET AL.

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

Argued March 7—decided June 6, 1972

*David J. Sullivan, Jr.,* for the appellant (plaintiff).

*Adrian W. Maher,* with whom were *Kevin J. Maher* and, on the brief, *Brian P. Maher,* for the appellees (defendants).

RYAN, J. The Superior Court dismissed the plaintiff's appeal from a finding and award of the workmen's compensation commissioner in favor of the defendants and the plaintiff has appealed to this court. The basic question presented is whether the plaintiff's injury arose out of and in the course of his employment.

The commissioner's finding discloses that Heinz Dombach was born in Switzerland on April 27, 1947, and emigrated to Toronto, Canada, on April 3, 1968. He brought with him a trunk, a suitcase and a bag.

He entered the employ of the defendant on May 26, 1968, as a service engineer. His work involved the installation and servicing of machine tools purchased from the defendant Olkon Corporation by various manufacturing plants located in the eastern half of the United States. In making service calls at some distance from Stamford, he would travel by plane, but if the call was to be made at a plant within a reasonable driving distance, he would drive his own car. The defendant reimbursed Dombach for his travel expenses.

Late in the afternoon of Friday, August 23, 1968, after making a service call in Union, New Jersey, the plaintiff telephoned his employer, inquiring as to his next assignment. William Buol, the president of the defendant corporation, informed him that he was to be at the L.A.B. Company in Skaneateles, New York, at 8 a.m. on Monday, August 26, 1968, and that he should arrive at Skaneateles on Sunday evening, August 25, 1968, in order to keep this appointment the following day. The plaintiff then asked Buol if he could drive his car, in which were the tools needed for making the service calls for his employer, to Toronto, Canada, to pick up his trunk containing his personal winter clothes which he brought with him from Switzerland to Canada, to spend the weekend with friends in Toronto, and then on Sunday, August 25, 1968, to drive from Toronto to Skaneateles, New York. Mr. Buol replied in the affirmative. The plaintiff returned to his home in Stamford on Friday evening and left about 10 p.m. that same evening intending to drive directly to Toronto. He crossed the Tappan Zee Bridge and proceeded along the New York Thruway, the same route he would have driven if he were on his way to Skaneateles. About 10:40 p.m., while driving on the

New York Thruway in the town of Sloatsburg, the plaintiff fell asleep. His car veered off the traveled portion of the highway and struck a guardrail. He was thrown from his car, and was found by the police 100 feet away from the point of impact. He sustained numerous lacerations and his spine was fractured. He was removed by ambulance to The Good Samaritan Hospital in Suffern, New York, where he was confined for a period of four weeks. Thereafter he was transferred to St. Joseph's Hospital where he remained as a patient as of the time of the rendition of the commissioner's award, having lost the use of both of his legs. The commissioner further found that on Friday, August 23, 1968, at 5 p.m. the plaintiff had completed his week's work for the defendant employer. His next service call was to be made on Monday, August 26, 1968, at 8 a.m. in Skaneateles, New York. He was, however, to arrive in Skaneateles, New York, Sunday evening, August 25, 1968, and remain there overnight. The commissioner concluded that travel on the highway was an important element of the plaintiff's employment; that the trip which the plaintiff was making on Friday evening, August 23, 1968, from Stamford to Toronto, Canada, was for the plaintiff's own personal business, for he was not intending to go to Skaneateles that Friday night; and that the plaintiff did not sustain any accidental injury which arose out of and in the course of his employment with the defendant employer.

The plaintiff's assignments of error are directed principally to the action of the trial court in sustaining the following conclusions of the commissioner: (1) The trip which the plaintiff was making on Friday evening, August 23, 1968, from Stamford to Toronto, Canada, was for the plaintiff's own per-

sonal business, for he was not intending to go to Skaneateles that Friday night. (2) The claimant did not sustain any accidental injury which arose out of and in the course of his employment with the employer. The plaintiff makes the further claim that the finding of the commissioner should have been corrected by adding thereto the following conclusions: (1) The work of the plaintiff created the necessity for travel on August 23, 1968; (2) service to the plaintiff's employer was at least a concurrent cause of the journey in question; (3) the employer was aware that the journey in question began after 5 p.m. on August 23, 1968, and was by expressed agreement assuming any hazards arising from the journey; (4) the employer was aware that the plaintiff left Stamford on Friday, August 23, 1968, because he had been ordered to be in Skaneateles, New York, on Sunday, August 25, 1968, and the trip to Toronto, Canada, was incidental to the trip to Skaneateles undertaken pursuant to orders received from his employer; (5) the accident and subsequent injuries incurred by the plaintiff did in fact arise out of and in the course of the plaintiff's employment with the employer; (6) the injuries sustained incurred within the period of employment, at a place where the plaintiff might reasonably be; (7) the claimant was reasonably fulfilling the duties of his employment; (8) the injuries sustained were a result of a risk involved in that employment and under conditions required by the employment; (9) the injuries arose out of and in the course of the plaintiff's employment. The addition of these conclusions would specifically eliminate the commissioner's conclusions, that the plaintiff's trip was for his own personal business and that the injuries sustained did not arise out of and in the course of his

employment, and substitute the conclusions that should have been reached had the law been properly applied to the facts.

To be entitled to workmen's compensation, the plaintiff has the burden of proving that his injuries were sustained in the course of his employment and that they arose out of that employment. *Hills* v. *Servicemaster of Connecticut River Valley, Inc.,* 155 Conn. 214, 216, 230 A.2d 604; *Metall* v. *Aluminum Co. of America,* 154 Conn. 48, 51, 221 A.2d 260; *Woodley* v. *Rossi,* 152 Conn. 1, 4, 202 A.2d 136; *Soucier* v. *Genovese,* 151 Conn. 430, 432, 198 A.2d 698; *Gordon* v. *United Aircraft Corporation,* 150 Conn. 328, 329, 189 A.2d 384.

The act defines an injury "arising out of and in the course of his employment" as one "happening to an employee . . . while he has been engaged in the line of his duty in the business or affairs of the employer upon the employer's premises, or while so engaged elsewhere on the employer's business or affairs by the direction, express or implied of the employer." General Statutes § 31-275; *Metall* v. *Aluminum Co. of America,* supra, 52. Our cases have held that an injury arises in the course of the employment when it takes place (a) within the period of the employment, (b) at a place where the employee may reasonably be and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it. *Woodley* v. *Rossi,* supra; *Farnham* v. *Labutis,* 147 Conn. 267, 269, 160 A.2d 120; *Labbe* v. *American Brass Co.,* 132 Conn. 606, 609, 46 A.2d 339; *Ruckgaber* v. *Clark,* 131 Conn. 341, 343, 39 A.2d 881; *Herbst* v. *Hat Corporation of America,* 130 Conn, 1, 5, 31 A.2d 329; *Larke* v. *Hancock Mutual Life Ins. Co.,* 90 Conn. 303, 308, 97 A. 320. An injury is said to arise out

of the employment when (a) it occurs in the course of the employment and (b) is the result of a risk involved in the employment or incident to it or to the conditions under which it is required to be performed. *Farnham* v. *Labutis,* supra; *Labbe* v. *American Brass Co.,* supra; *Ruckgaber* v. *Clark,* supra; *Larke* v. *Hancock Mutual Life Ins. Co.,* supra.

An injury sustained on a public highway while going to or from work is ordinarily not compensable. A principal reason for this rule is that employment ordinarily does not commence until the claimant has reached the employer's premises, and consequently an injury sustained prior to that time would ordinarily not occur in the course of the employment so as to be compensable. Furthermore, in cases falling within the ordinary rule, the employee's means of transportation, as well as his route are entirely within his discretion, unfettered by any control or power of control on the part of the employer. *Lake* v. *Bridgeport,* 102 Conn. 337, 342–43, 128 A. 782. There are a number of exceptions to the ordinary rule, four of which are pointed out in the *Lake* case, supra, 343: (1) If the work requires the employee to travel on the highways; (2) where the employer contracts to furnish or does furnish transportation to and from work; (3) where, by the terms of his employment, the employee is subject to emergency calls and (4) where the employee is injured while using the highway in doing something incidental to his regular employment, for the joint benefit of himself and his employer, with the knowledge and approval of the employer. See *McKiernan* v. *New Haven,* 151 Conn. 496, 498, 199 A.2d 695. In the case at bar, the commissioner found that travel on the highway was an important element of the plaintiff's employment. The critical question is whether

the plaintiff's use of the highways on the night in question could be considered as a benefit to the employer.

The finding discloses that the plaintiff was ordered by Buol, the president of the defendant company, to be at the L.A.B. Company in Skaneateles, New York, at 8 a.m. on Monday, August 26, 1968, and that he was instructed to be in Skaneateles Sunday evening, August 25, so as to be able to keep his appointment the next morning promptly; that on receiving this order, the plaintiff asked Buol if he could drive his car to Toronto, Canada, to pick up his trunk, spend the weekend with friends in Toronto, and then, on Sunday, August 25, to drive from Toronto to Skaneateles; that Buol gave him express permission to do so; that the plaintiff left Stamford at about 10 p.m. on Friday night to drive to Toronto; that he was carrying in his car the tools needed for making service calls as a service engineer; that at the time of his injury he was on the New York Thruway, the same highway over which he would have driven to Skaneateles; that it was customary for the plaintiff to use his own car in making service calls for the company and that the employer reimbursed him for his travel expenses, meals and motel charges. Skaneateles is on the route to Toronto. On these findings of subordinate fact the commissioner concluded that the trip was for the plaintiff's own personal business because he was not intending to go to Skaneateles that Friday night. Intent is a factor to be considered. *Herbst v. Hat Corporation of America,* supra, 4. It is not, however, the determinative test in deciding if there is a benefit to the employer and if the travel occurred in the course of the employment.

The applicable legal principles were enunciated

by Judge Cardozo in *Matter of Marks* v. *Gray,* 251 N.Y. 90, 167 N.E. 181. He said that the pertinent inquiry is whether the employment or something else has set the traveler forth on his journey. "We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand was canceled. . . . The test in brief is this: if the work of the employee creates the necessity for travel he is in the course of his employment, though he is serving at the same time some purpose of his own. . . . If, however, the work has no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk." *Matter of Marks* v. *Gray,* supra, 93.

Larson refers to this as the dual-purpose-trip rule and summarizes it as follows: "[W]hen a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of failure of the private purpose, though the business errand remained undone; it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey." 1 Larson, Workmen's Compensation Law, p. 294.5.

This rule has been accepted by the great majority

of jurisdictions. *Barrett* v. *Barrett,* 78 Ariz. 219, 278 P.2d 409; *Fine Nest Trailer Colony, Inc.* v. *Reep,* 235 Ark. 411, 360 S.W.2d 189; *Dauphine* v. *Industrial Accident Commission,* 57 Cal. App. 2d 949, 135 P.2d 644; *Capital Chevrolet Co.* v. *Industrial Commission,* 159 Colo. 156, 410 P.2d 518; *Children's Bureau* v. *Nissen,* 42 Del. 209, 29 A.2d 603; *Cook* v. *Highway Casualty Co.,* 82 So. 2d 679 (Fla.); *Allstate Ins. Co.* v. *Phoenix,* 90 Ga. App. 619, 83 S.E.2d 335; *Irwin-Neisler & Co.* v. *Industrial Commission,* 346 Ill. 89, 178 N.E. 357; *United States Fiber Glass Industries* v. *Uland,* 137 Ind. App. 278, 206 N.E.2d 385; *Shindhelm* v. *Razook,* 190 Kan. 80, 372 P.2d 278; *Watson* v. *Grimm,* 200 Md. 461, 90 A.2d 180; *Mandell's Case,* 322 Mass. 328, 77 N.E.2d 308; *Anderson* v. *Kroger Grocery & Baking Co.,* 326 Mich. 429, 40 N.W.2d 209; *Kaplan* v. *Alpha Epsilon Phi Sorority,* 230 Minn. 547, 42 N.W.2d 342; *Durr's Dependents* v. *Schlumberger Oil Well Surveying Corporation,* 227 Miss. 606, 86 So. 2d 507; *O'Dell* v. *Lost Trail, Inc.,* 339 Mo. 1108, 100 S.W.2d 289; *Hammond* v. *Keim,* 128 Neb. 310, 258 N.W. 478; *Martin* v. *Hasbrouck Heights Building Loan & Savings Assn.,* 132 N.J.L. 569, 41 A.2d 898; *Parr* v. *New Mexico State Highway Dept.,* 54 N. Mex. 126, 215 P.2d 602; *Humphrey* v. *Quality Cleaners & Laundry,* 251 N.C. 47, 110 S.E.2d 467; *Cochran* v. *Maassen Tool & Supply Co.,* 204 Okla. 60, 226 P.2d 953; *Corley* v. *South Carolina Tax Commission,* 237 S.C. 439, 117 S.E.2d 577; *Texas Employers Ins. Assn.* v. *Knipe,* 150 Tex. 313, 239 S.W.2d 1006; *Barrager* v. *Industrial Commission,* 205 Wis. 550, 238 N.W. 368.

In *Matter of Marks* v. *Gray,* supra, a plumber's helper who was going to drive to a neighboring town to meet his wife was asked by his employer to fix some faucets there—a trifling job which would not

in itself have occasioned the trip. In applying the test, Judge Cardozo concluded that, if at the last minute word had come that the faucets no longer needed fixing, the trip would nevertheless have gone forward,while if the necessity of meeting his wife had disappeared, the employee would not have made the trip to fix the faucets.

"It is inaccurate and misleading to call this test, as sometimes has been done, the 'dominant purpose' test, or to paraphrase it by saying that the trip is a business trip if the 'primary' purpose is business. Judge Cardozo used no such language. He said it was sufficient if the business motive was a concurrent cause of the trip. He then defined 'concurrent cause' by saying that it meant a cause which would have occasioned the making of the trip even if the private mission had been cancelled. One detail must be stressed to make this rule complete: it is not necessary, under this formula, that, on failure of the personal motive, the business trip would have been taken *by this particular employee at this particular time.* It is enough that someone sometime would have had to take the trip to carry out the business mission. Perhaps another employee would have done it; perhaps another time would have been chosen; but if a special trip would have had to be made for this purpose, and if the employer got this necessary item of travel accomplished by combining it with this employee's personal trip, it is accurate to say that it was a concurrent cause of the trip, rather than an incidental appendage or afterthought. Once this test is satisfied, there is no occasion to weigh the business and personal motives to determine which is dominant." 1 Larson, op. cit., p. 294.11; see *Allstate Ins. Co.* v. *Phoenix,* supra, 335; *Corp* v. *Joplin Cement Co.,* 337 S.W.2d 252

(Mo.); *Neumeister* v. *Eastern Brewing Corporation,*
73 N.J. Super. 193, 179 A.2d 551.

In the case at bar, while the plaintiff's headquarters is in Stamford, Connecticut, he had no fixed place of employment. He went to various towns and cities to do the work assigned to him by his employer and where possible, he traveled in his own car, for which he was reimbursed by his employer at the rate of ten cents per mile. An injury incurred while traveling on the employer's business, therefore, would arise in the course of and out of the employment. A perusal of the evidence printed in the record indicates that the president of the defendant company testified in substance that the trip to Skaneateles had to be made because the customer "was very impatient to get service." He said that the plaintiff asked his "permission whether he could go to Toronto *during this trip* to pick up a suitcase of his that he still had up there. . . . I told him it was all right." (Emphasis added.) Buol also testified that he did not tell the plaintiff that he had to leave Stamford at any special time. He also said he did not care what time the plaintiff left as long as he was in Skaneateles on Sunday evening. We also note that there was evidence to the effect that the company had approved the expense for the plaintiff's travel in his car up to the point of his accident in Sloatsburg, New York. The commissioner seemed to place emphasis in his finding that on Friday, August 23, 1968, at 5 p.m., the plaintiff completed his week's work for his employer. When one week ended is of no importance. The crucial question is whether the plaintiff was acting in the course of his employment at the time of the injury. He had not yet reached Skaneateles at the time of the accident. This portion of the trip from Stamford to Skaneate-

les had to be made. It was unquestionably for the benefit of the employer and it was with its express consent. When a trip of this kind serves both business and personal purposes, it is a business trip if it would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone, even if it had not coincided with the employee's personal journey. We are convinced that in determining whether the injury arose out of and in the course of the employment an erroneous standard of law was applied by the commissioner. The burden of proof that the injury arose out of and in the course of his employment rests on the plaintiff. This presents a question for the determination of the commissioner and we have no intention of usurping his function. Cases under the Workmen's Compensation Act are on a different basis from actions between ordinary litigants. No case under this act should be finally determined when the trial court, or this court, is of the opinion that through inadvertence or otherwise, the facts have not been sufficiently found to render a just judgment. When this appears, the case must be returned to the commissioner for a finding in accordance with the suggestions made by the trial court or this court, and for an award to be made on the corrected finding. *Herbst* v. *Hat Corporation of America,* 130 Conn. 1, 4, 31 A.2d 329; *Cormican* v. *McMahon,* 102 Conn. 234, 238, 128 A. 709.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to sustain the appeal and remand it to the commissioner for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.