******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., with whom PALMER, J., joins, concurring. I agree with the majority that an interpretation of the travel time regulation, § 31-60-10 of the Regulations of Connecticut State Agencies, included in a guidebook published by the Connecticut Department of Labor (department) is not entitled to deference. In concluding that federal wage law preempts state law with respect to the claim of the plaintiff, Brian Sarrazin, however, the majority effectively concludes that § 31-60-10 provides no basis for deeming the hours of an employee's regular commute to and from work compensable, irrespective of whether the employee is required to perform services for the employer's benefit during that commute and whether the performance of such services imposes substantial burdens on the employee. In so concluding, the majority adopts a construction that not only conflicts with evidence of the department's view of its own regulation, but, more importantly, is at odds with the language of the regulation itself and the remedial purposes of Connecticut's wage enforcement scheme. It is my view that the regulation's capacious text affords an equal or greater basis for potentially compensable work time than is available under federal law. Therefore, I would conclude that federal law does not preempt state law in the present case.[1] Nonetheless, in light of the trial court's findings regarding the plaintiff's use of a vehicle provided by the defendant, Coastal, Inc., to transport tools to his work site, the trial court properly determined that the plaintiff is not entitled to wages for the period of his commute. Therefore, I also would affirm the trial court's judgment, but on the basis of state law, rather than the federal law on which the majority and the trial court have relied.

The plaintiff sought compensation under General Statutes (Supp. 2014) §§ 31-60, 31-71b, General Statutes § 31-76c and under § 31-60-10 (b) of the regulations. In light of the majority's reliance on subsections (c) and (d) of § 31-60-10 to support its conclusion that subsection (b) unambiguously does not apply to activities that occur in an employee's usual commute to and from work, it is necessary and useful to consider all of the subsections of the regulation. Section 31-60-10 provides in relevant part: "(a) For the purpose of this regulation, 'travel time' means that time during which a worker is required or permitted to travel for purposes incidental to the performance of his employment *but does not include time spent in traveling from home to his usual place of employment or return to home, except as hereinafter provided in this regulation.*

"(b*) When an employee, in the course of his employment, is required or permitted to travel for purposes which inure to the benefit of the employer, such travel*

*time shall be considered to be working time and shall be paid for as such. . . .*

"(c) When an employee is required to report to other than his usual place of employment at the beginning of his work day, if such an assignment involves travel time on the part of the employee in excess of that ordinarily required to travel from his home to his usual place of employment, such additional travel time shall be considered to be working time and shall be paid for as such.

"(d) When at the end of a work day a work assignment at other than his usual place of employment involves, on the part of the employee, travel time in excess of that ordinarily required to travel from his usual place of employment to his home, such additional travel time shall be considered to be working time and shall be paid for as such." (Emphasis added.)

I agree with the majority that subsection (a) of § 31-60-10 is effectively definitional rather than substantive, because, unlike subsections (b), (c), and (d), it does not set forth any circumstance in which an activity is compensable. Indeed, by providing in § 31-60-10 (a) that travel time "does not include time spent in traveling from home to [an employee's] usual place of employment or return to home, except as hereinafter provided in this regulation," the regulation acknowledges a well established presumption under labor law, which I discuss later in this opinion, that time spent commuting to work is generally not compensable. Contrary to the majority, however, I do not construe this language to mean that, unless a subsection that follows *expressly* incorporates language that refers to time traveling from home to one's usual place of employment or return home, as do subsections (c) and (d), such time cannot be deemed "travel time" within the meaning of subsection (a). Rather, I would conclude that this exception necessarily applies to subsection (b).

There is abundant evidence to support this conclusion. First, for purposes of structure and clarity, it would be illogical to immediately follow the phrase "except as hereinafter provided in this regulation" in § 31-60-10 (a) with the only subsection to which that exception does not apply. Indeed, this dissonance is even more obvious under the original version of the regulation promulgated in 1951, which was identically worded in all material respects but contained no subsections, so that the language in subsection (b) of § 31-60-10 was then in the sentence that immediately followed the phrase "except as may hereinafter be provided in this regulation." See Regs., Conn. State Agencies (1951) § 180-10. Moreover, the definition of travel time under subsection (a) of § 31-60-10 makes no sense as applied to subsections (c) and (d). Subsections (c) and (d) do not set forth any circumstance in which an employee may be entitled to compensation for travel to or from

his usual place of employment. Rather, subsections (c) and (d) deem compensable that travel time "*in excess of* that ordinarily required to travel" to or from an employee's "usual place of employment" when an employee is traveling to and from a work location "*other* than his usual place of employment . . . ." (Emphasis added.) Regs., Conn. State Agencies § 31-60-10 (c) and (d). Thus, because the exception provided under subsection (a) is essentially irrelevant to subsections (c) and (d), it logically would apply to subsection (b).

I next consider the text of subsection (b) of § 31-60-10, providing for travel time to be paid as working time if the employee is permitted or required to travel "in the course of his employment . . . for purposes which inure to the benefit of the employer . . . ." Undoubtedly, this language embraces circumstances in which the employee travels for employment related purposes after the employee arrives at the work site, during his or her workday. This language also, however, is sufficiently broad to extend to certain, but perhaps infrequent, circumstances during the employee's travel to and from the usual place of employment. Indeed, had the department intended this subsection to be limited to travel that occurs after the workday commences, presumably it would have used the same clear language to that effect that it did in other contemporaneous regulations addressing travel time for specific professions and classes of workers when it drafted the original regulation in 1951. See, e.g., Regs., Conn. State Agencies (1949) § 180-4-2 (working time includes "all the time during which an employee is required, instructed or requested by an employer to travel after the beginning and before the end of the regular work day to a place other than the regular of employment"); see also Regs., Conn. State Agencies (1951) §§ 180-4-9 and 180-10-9 (referring to "time during which an employee is required, instructed, or requested by an employer to travel after the beginning and before the end of the regular work day").

The department's use of the term "in the course of his employment" in § 31-60-10 (b) also is instructive. This term is foundational language with deep roots in workers' compensation law, which is related to the wage enforcement scheme. See *Shell Oil Co.* v. *Ricciuti*, 147 Conn. 277, 282–83, 160 A.2d 257 (1960); *Morales* v. *PenTec, Inc.*, 57 Conn. App. 419, 428, 749 A.2d 47 (2000). Consistent with § 31-60-10 (a), workers' compensation law long has recognized that, as a general rule, travel to and from work is not deemed to be conduct that occurs in the course of employment, and thus is not compensable. See *Dombach* v. *Olkon Corp.*, 163 Conn. 216, 222, 302 A.2d 270 (1972) ("An injury sustained on a public highway while going to or from work is ordinarily not compensable. A principal reason for this rule is that employment ordinarily does not commence until the claimant has reached the employer's premises

. . . . Furthermore, in cases falling within the ordinary rule, the employee's means of transportation, as well as his route are entirely within his discretion, unfettered by any control or power of control on the part of the employer."); *Whitney* v. *Hazard Lead Works*, 105 Conn. 512, 517, 136 A. 105 (1927) ("[t]he employees of a business concern cannot, as a general rule, be regarded as in the course of their employment while going to or returning from the place of their employment"). Significantly, however, there are exceptions to that rule that consider, inter alia, whether a benefit inures to the employer, a consideration also present in § 31-60-10 (b), as well as whether the activity is "incidental to" the employment, a consideration in § 31-60-10 (a). See *McNamara* v. *Hamden*, 176 Conn. 547, 551–52, 398 A.2d 1161 (1979) ("incidental to" employment); id., 552–53 (benefit to employer); *Dombach* v. *Olkon Corp.*, supra, 222 (citing exception "where the employee is injured while using the highway in doing something incidental to his regular employment, for the joint benefit of himself and his employer, with the knowledge and approval of the employer"); *Whitney* v. *Hazard Lead Works*, supra, 517 ("'incidental to'" duties of employment). Given the well established significance of the term "in the course of his employment," it is reasonable to presume that the department was aware of the meaning ascribed to this term when it drafted the travel time regulation without providing a definition to differentiate its meaning from that applied in a related statutory or regulatory scheme. Accordingly, the use of such a term in § 31-60-10 (b) further suggests that a usual commute may be compensable if the employee is engaged in an activity that not only is incidental to his or her employment, but also occurs in the course of his employment and inures to the benefit of the employer.[2]

Finally, as I indicated at the outset of this opinion, I agree with the majority that we should not defer to the interpretation of § 31-60-10 set forth in the department's guidebook because it was not formally promulgated. Nonetheless, the guidebook provides some evidence that the department construes its own regulation to provide for compensation during a usual commute in certain circumstances.[3]

In light of all of this evidence, I conclude that § 31-60-10 (b) treats travel time during an employee's usual commute as working time under the admittedly limited circumstances set forth therein. Indeed, at the very least, the aforementioned considerations should compel a conclusion that the regulation is ambiguous as to its application to a usual commute. When a statute or regulation is remedial, as is the wage enforcement scheme, ambiguity must be resolved in favor of the class intended to be protected, employees. See *State* v. *AFSCME, AFL-CIO, Council 4, Local 2663*, 257 Conn. 80, 93, 777 A.2d 169 (2001); *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 696, 651 A.2d 1286

(1995). It would be both inequitable and contrary to the scheme's remedial purpose to preclude compensation if an employer has required an employee to perform services during his commute that are related to his employment, that inure to the employer's benefit, and that impose burdens on the employee such that the time is not the employee's to use for his or her own purposes. For example, an employee might be required to drive a company van from his home and to transport all of the members of his work crew from their homes to the work site and back. Under such circumstances, the employee would be performing a service for the employer related to his employment while lacking the freedom that the employee otherwise would have if such services were not required, i.e., using his own vehicle to transport family members or goods for his personal needs, taking care of personal errands along the way, etc.

Conversely, however, if an employer were to require or permit the employee to perform an activity incidental to the employment that conferred a de minimis benefit on the employer and that imposed no greater burden on the employee than that incurred in his or her usual commute or imposed even a de minimis burden, deeming such time compensable would be inconsistent with the principles reflected in the wage laws. Under the wage laws, an employee is paid "wages" for "hours worked." See General Statutes § 31-71a (3) (defining wages);[4] General Statutes § 31-76b (2) (A) (defining hours worked).[5] The meanings ascribed to these terms reflect the fundamental principle that an employee's wages are linked to his ascertainable efforts rendered for the benefit of the employer. See *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 782, 961 A.2d 349 (2008) (recognizing wages are linked to ascertainable efforts of particular employee); *West* v. *Egan*, 142 Conn. 437, 443, 115 A.2d 322 (1955) ("[t]he legislative policy of the minimum wage law is to establish a wage fairly and reasonably commensurate with the value of a particular service or class of service rendered" [internal quotation marks omitted]). The scheme also reflects an understanding that an employee must be compensated if the employee is burdened by a condition of employment even if the employer obtains only a de minimis benefit. See General Statutes § 31-76b (2) (A) (including as hours worked, inter alia, "the time when an employee is required to wait on the premises while no work is provided by the employer"). In other words, the scheme recognizes an exchange of consideration—some burden on or detriment to the employee for which wages are paid in relation to a benefit conferred on the employer. Therefore, interpreting the travel time exception to apply to any circumstance conferring any benefit on the employer no matter how de minimis without considering whether the employee incurs any burden beyond his or her normal commute, which would otherwise

be noncompensable, would be inconsistent with the purposes of the wage enforcement scheme. Similarly, because in some instances the use of a company vehicle in lieu of an employee's own vehicle can confer a substantial financial benefit to the employee, it would be inconsistent with the wage enforcement scheme to construe the regulation to require the payment of wages for an employee's usual commute if the use of the employer's vehicle results in a net benefit to the employee, even if that use also results in a de minimis benefit to the employer.

Therefore, consistent with the text of § 31-60-10, as well as the foundational principles and remedial purpose of the wage enforcement scheme, I would interpret § 31-60-10 (b) to mean, *at the very least*, that: (1) the employer must obtain more than a de minimis benefit from a service, which is incidental to the employment, performed by the employee during the usual commute; and (2) the employee must incur more than a de minimis burden beyond his or her usual commute.[6] In circumstances in which the service provides a joint benefit to the employer and employee, the benefit to the employee would need to be weighed against any detriment to the employee to ascertain whether, under the totality of circumstances, the employee has assumed more than a de minimis burden beyond the commute itself. Because this construction provides equal or potentially greater benefits than those afforded under federal law; see part II of the majority opinion (explaining scope of federal law); I would conclude that § 31-60-10 is not preempted with respect to the plaintiff's claim for benefits in the present case.

With respect to that claim, the trial court found that, although the defendant required the plaintiff to use the company vehicle as a condition of his employment, the use of the vehicle conferred a benefit on the plaintiff. The court further found that the fact that some tools were stored in the vehicle and were used at the employer's job sites was merely incidental to the use of the vehicle for commuting. Therefore, the plaintiff is not entitled to have his commuting time paid as working time under § 31-60-10 (b). Although I recognize that my analysis yields the same result as the majority opinion in the present case, and that federal wage law likely would require the payment of wages for an onerous burden imposed by an employer on an employee's commute, these facts do not relieve me of my obligation to ascertain whether our state law recognizes an employee's right to the payment of wages.

I respectfully concur.

[1] I agree with part I of the majority opinion concluding that the savings clause of the federal Fair Labor Standards Act, 29 U.S.C. § 218 (a), applies to § 31-60-10 of the regulations.

[2] I recognize that an injury may be deemed to have occurred in the course of employment for purposes of workers' compensation law even when the employee was not paid wages for the activity that gave rise to the injury. See *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 274 Conn. 219, 232,

875 A.2d 485 (2005) ("[T]he fact that the employee is not paid for his travel time does not mean that the trip was not in the course of employment. . . . Payment for time is only one of the evidences that the journey itself was part of the service." [Citations omitted; internal quotation marks omitted.]). Nonetheless, because § 31-60-10 (b) also requires that a benefit inure to the employer and that the act is incidental to the employment, it is more limiting than the "in the course of employment" requirement under workers' compensation law.

[3] Unfortunately, the department did not request permission to file an amicus brief in this case to shed light on the basis of its construction of the regulation. The department's perspective on the enigmatic nature of this regulatory scheme would no doubt have been of assistance to the court.

[4] Wages are defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation . . . ." General Statutes § 31-71a (3).

[5] "'Hours worked' include all time during which an employee is required by the employer to be on the employer's premises or to be on duty, or to be at the prescribed work place, and all time during which an employee is employed or permitted to work, whether or not required to do so, provided time allowed for meals shall be excluded unless the employee is required or permitted to work. Such time includes, but shall not be limited to, the time when an employee is required to wait on the premises while no work is provided by the employer. (B) All time during which an employee is required to be on call for emergency service at a location designated by the employer shall be considered to be working time and shall be paid for as such, whether or not the employee is actually called upon to work. (C) When an employee is subject to call for emergency service but is not required to be at a location designated by the employer but is simply required to keep the employer informed as to the location at which he may be contacted, or when an employee is not specifically required by his employer to be subject to call but is contacted by his employer or on the employer's authorization directly or indirectly and assigned to duty, working time shall begin when the employee is notified of his assignment and shall end when the employee has completed his assignment . . . ." General Statutes § 31-76b (2) (A).

[6] In light of the trial court's findings in the present case, which I discuss later, it is not necessary to define the precise contours of the regulation. Indeed, I imagine that this court's decision in the present case will prompt the department to commence formal rule-making proceedings to address these and related issues.

———————————————————