WILLIAM RYERSON *vs.* A. E. BOUNTY COMPANY ET AL.

Third Judicial District, New Haven, January Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

An employee is in the course of his employment at the time of an injury, within the meaning of the Workmen's Compensation Act, if it occurs within the period of his employment at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in doing something incidental to it; and the injury arises out of the employment when it occurs in the course of his employment and is the result of a risk involved in or incident to it, or to the conditions under which it is required to be performed.

An injury does not arise out of the employment unless there is a

causal connection between it and the employment or the conditions incident thereto.

Facts established by a plaintiff who appears on his own behalf without counsel should not be unduly narrowed or minimized.

A momentary or brief departure by an employee from the specific duty of his employment does not break the continuity thereof, if it is necessary or convenient in the ordinary course of things to enable him to carry on his work and is what might be expected of the ordinary man while actuated by a purpose to do his duty.

The plaintiff, a watchman in the defendant's stables, over which he lived, was subject to his employer's call at all times during the twenty-four-hour period. One of his duties was to mix feed for the horses which he customarily did, with the tacit assent of the defendant, in one of the rooms in which he lived. On the evening in question he had prepared the mixture and was about to descend to the stables for the purpose of giving it to the horses, when, in attempting to sit down in a rocking chair in order to tie his shoe string, he slipped and fell to the floor fracturing his hip. *Held* that the act of the plaintiff in attempting to tie his shoe string was for the purpose of enabling him to perform his duties without unnecessary danger or inconvenience and therefore did not remove him from the scope or sphere of his employment; and that his injury arose out of and in the course of his employment.

Argued January 18th—decided February 28th, 1928.

APPEAL by the defendant from a finding and award of the compensation commissioner of the fourth district in favor of the plaintiff, taken to the Superior Court in Fairfield County and tried to the court, *Simpson, J.;* judgment rendered sustaining the appeal and vacating the award, from which the plaintiff appealed. *Error and cause remanded with direction.*

*Joseph L. Melvin,* for the appellant (plaintiff).

*Arthur B. O'Keefe,* with whom, on the brief, was *Thomas F. Mitchell,* for the appellees (defendants).

HAINES, J.   There are no requests for change in the finding, and it appears that the plaintiff was sev-

enty-two years of age and was employed at an average weekly wage of $21 as a watchman at the company's stables in Stamford, and was subject to call of his employer at all times during the twenty-four-hour period. He lived above the stables and it was a part of his duties to mix feed for the horses. In doing so. it was the custom to "fix" the feed with saltpeter and nitre before giving it to them, and this was done in one of the rooms in which the plaintiff lived.

At six o'clock on the evening of October 23d, 1926, while in his room, the plaintiff had finished the mixing of the feed and before giving the mixture to the horses, he attempted to seat himself in a rocking chair to tie his shoe string, when he slipped and fell to the floor fracturing his hip.

Before the commissioner, the defendant contended that the injury did not arise out of and in the course of the employment, but the commissioner found against this claim and awarded the plaintiff compensation. Upon appeal by the defendant, the Superior Court reversed this conclusion and vacated the award.

Two questions are thus presented by this appeal: (a) whether the injury arose in the course of the employment, and (b) whether it arose out of the employment.

An injury arises in the course of the employment when it takes place (a) within the period of the employment, and (b) at a place where the employee may reasonably be, and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it. *Larke* v. *Hancock Mutual Life Ins. Co.,* 90 Conn. 303, 308, 97 Atl. 320; *Harivel* v. *Hall-Thompson Co.,* 98 Conn. 753, 755, 120 Atl. 603; *Whitney* v. *Hazard Lead Works,* 105 Conn. 512, 517, 136 Atl. 105.

The facts found clearly bring the plaintiff within

these requirements. He was on duty for his employer twenty-four hours each day. One of his specific duties was to mix the feed for the horses and give it to them. It further appears that the mixing was done in the plaintiff's room over the stables. No suggestion appears that his employment did not contemplate that he live over the stables and mix the feed there, and it is a fair inference that this was with the knowledge and the tacit assent of the employer. It is true the finding speaks of a custom to "fix" saltpeter and nitre with the feed, but this statement as to the method of making the mixture is not a fact of controlling importance.

An injury is said to arise out of the employment (a) when it occurs in the course of the employment, and (b) when the injury is the result of a risk involved in the employment or incident to it or to the conditions under which it is required to be performed. *Marchiatello* v. *Lynch Realty Co.*, 94 Conn. 260, 263, 108 Atl. 799; *Harivel v. Hall-Thompson Co.*, 98 Conn. 753, 757, 120 Atl. 603.

The commissioner held that the facts satisfied these requirements, while the trial court reached the opposite conclusion.

In order to meet these requirements, it was necessary to find a causal connection between the injury and the employment or the conditions incident to it. *Marchiatello* v. *Lynch Realty Co.*, 94 Conn. 260, 263, 108 Atl. 799; *Gonier* v. *Chase Companies, Inc.*, 97 Conn. 46, 49, 115 Atl. 677.

The trial court evidently felt it did not appear that the work was done in the plaintiff's room under a condition which was expressed or implied in the contract of employment. As we have already pointed out, and as will appear from a careful reading of the finding, the "custom" relates rather to the use of salt-

peter and nitre than to the place where the food was mixed. It appears from the record, that the plaintiff was not represented before the commissioner by counsel but appeared in person. The established policy of courts requires that such facts as a claimant without counsel may establish, shall not be unduly narrowed or minimized.

Properly read, paragraph four shows that the duty of the plaintiff was to mix the feed and that this duty was performed in his room. We are justified in concluding therefore that this was his duty at that time and place, and that the work was done in his room if not with the specific consent, yet with the tacit assent of the employer, and certainly for the mutual convenience of both parties to the contract of employment. If, under those conditions, a fire had broken out in the building and the plaintiff had been injured thereby, the case would fall directly within the decision in the *Harivel* case, and it would have been held a risk arising out of the conditions of his employment.

But the defendant urges that in attempting to sit down for a moment while in the course of his employment, he departed from that employment and engaged in an act personal to himself alone. It is obvious that being in the active performance of his duty up to the moment that he attempted to sit down and being, moreover, on duty at all times, the shoe string must have become untied during the course of the employment even if the employment had not been the cause of its becoming untied, as to which there is no finding. The fact is within common knowledge that a shoe string in that condition would have been apt to trip the plaintiff had he attempted to go down stairs with the feed without tying it. To hold, then, that sitting down to tie the shoe string was a departure from his duty, is to hold that he was not justified

in removing the danger which he would otherwise have incurred in the employer's service. But aside from these considerations, it has been many times held that a momentary or brief turning from the specific duty of the employee to other matters necessary or convenient in the ordinary course of things to enable the employee to continue in the performance of his duties, does not interrupt the continuity of the employment. Such departures are very properly held to be acts naturally incident to the employment itself.

There is a close though not precise analogy between this case and several others which have been before us. In *Richards* v. *Indianapolis Abattoir Co.*, 92 Conn. 274, 276, 102 Atl. 604, the claimant's duties were those of a driver of the employer's meat truck, and at this time required him to take some meat to and up an elevator. The elevator being in use, he had fifteen minutes to wait, and for the purpose of warming himself, he turned aside about seven feet and took a seat four feet in front of the fire-box of the boiler, where he fell asleep. The heat or a flying spark set fire to his apron and he was burned. It was pointed out in that case that the claimant at the time of the injury was on duty, within his working hours, in a place where he might reasonably be and waiting for an opportunity to continue his services.

In *Robinson* v. *State*, 93 Conn. 49, 104 Atl. 491, the claimant was an assistant working foreman in the State highway department, and foreman of a gang of men who were repairing a State highway. While engaged in work on the easterly side of the road, an acquaintance came by in an automobile and called to him, stopping his car on the opposite side of the road. The claimant left his work and walked quickly with his head down, in a diagonal direction across the road and was struck by another automobile. The

commissioner, and the Superior Court on appeal, refused compensation on the ground that the injury did not arise out of and in the course of the employment. In reversing that decision we said that, in the absence of a specific finding, it was a fair inference from the circumstances that the claimant's object in crossing the road was to talk with his friend. The conditions of the employment did not require that the claimant remain in the place where he was working at the time of the interruption, and we held that he might reasonably cross the road in the due performance of his duties, that his uninterrupted attention to the labor he had been performing was not required by the terms of his employment, and that there was no evidence that crossing the road interfered with the due performance of his duties.

In *De Luca* v. *Park Commissioners*, 94 Conn. 7, 107 Atl. 611, the deceased was employed in a public park and took shelter under a nearby tree during a thunder shower and was killed when the tree was struck by lightning. In that case we said: "The act of seeking and obtaining shelter arose out of, that is, was within the scope or sphere of his employment, and was a necessary adjunct and an incident to his engaging in and continuing such employment. Obtaining shelter from a violent storm in order that he might be able to resume work when the storm was over, was not only necessary to the preservation of the deceased's health and perhaps his life, but was incident to the deceased's work, and was an act promoting the business of the master."

In *Sundine's Case*, 218 Mass. 1, 105 N. E. 433, an employee who was engaged by the week, left the workroom where she was employed, to go to lunch, and was injured while descending a flight of stairs. The court held that it would be too narrow a construction of the

contract of employment to say that her work was suspended when she went out for this merely temporary purpose and was only revived upon her return, and held that it was an incident of her employment to go out for lunch.  Citing *Boyle* v. *Columbian Fireproofing Co.*, 182 Mass. 93, 102, 64 N. E. 726, and also *Blovelt* v. *Sawyer*, L.R. (1904) 1 K.B.D. 271, where it was held that the dinner hour, though not paid for, was yet included in the time of employment.

In *Brightman's Case*, 220 Mass. 17, 107 N. E. 527, the deceased was a cook upon a lighter.  The craft began to sink and the cook made several trips to and from the deck in an effort to save some of his clothes and a surveying instrument, with which he hastened to the pier, where he died from his exertions, of valvular disease of the heart.  The court said: "The standard to be applied is not that which now, in the light of all that has happened, is seen to have been directly within the line of labor helpful to the master, but that which the ordinary man required to act in such an emergency might do while actuated with a purpose to do his duty. . . . There may be found to be apparent to the rational mind a causal connection between the employment and the thing done by the employee at the time of the sinking of the lighter."

In *Zabriskie* v. *Erie Railroad Co.*, 86 N. J. L. 266, 22 Atl. 385, an employee left the room where he was employed, to go to a toilet in a neighboring building, and was injured while he was crossing the street.  The contention was made in that case that he was not doing his employer's work at the time, but the court decided against the claim, saying: "It is as important to the employer as to the employee that the latter may do his work without unnecessary physical inconvenience."  To the same effect, see *De Filippis* v. *Falkenburg*, 155 N. Y. Supp. 761.

Again, in *Northwestern Iron Co.* v. *Industrial Commission,* 160 Wis. 633, 152 N. W. 416, the claimant was employed in dumping hot iron briquettes from cars which were run into the yard from the mills. He had no specific directions as to what he should or should not do while waiting for a car of briquettes. On a cold night he delayed dumping a car which had come in, until he could warm himself from the heat of the briquettes, and while so engaged a second car ran into and injured him. The court said: "To protect himself from undue and unnecessary exposure to the cold was a duty he owed his master as well as himself, and it does not follow that he left his master's employment because he negligently allowed the second car to run into him while he was warming himself."

The question presented by the particular circumstances of the present case is not without some difficulty and justifies the somewhat extended citations of authorities which we have given. The plaintiff was allowed by the employer to do this work as he was doing it; the work was not finished, but a very natural and not unusual necessity arose for a brief interruption of the particular task upon which he was engaged. This interruption did not in any way interfere with his duty to his employer, but was rather in furtherance of it. He was faced with the necessity of either subjecting himself to the risk of injury by going down stairs with the shoe string untied, or seating himself and tying it. The latter was the reasonable and proper course, both in his own interest and that of the employer as well. It comes clearly within the thought expressed in the *De Luca* case; it was done "in order that he might be able to resume work" and was necessary for his safety and so was "an act promoting the business of the master." It meets the standard of conduct set up in the *Brightman* case, being what "the ordinary

Ryerson *v.* Bounty Co.

man required to act in such an emergency might do while actuated with a purpose to do his duty." Sitting down in the chair to tie the shoe string was as important an act for the employer as for the employee, so that the master's work could be done, as in the *Brightman* case, without unnecessary danger or physical inconvenience. It was a duty which he owed to the master as well as to himself, even more clearly than in the circumstances of the *Northwestern Iron Co.* case.

The cases in our own State which have been cited, also justify the holding that this act of the plaintiff was within the scope or sphere of his employment and a necessary adjunct or incident of it in order that he might continue his task in safety.

We are therefore brought to the conclusion that the plaintiff's injury not only arose in the course of his employment but arose out of his employment. It was within the implied terms of his contract of employment, and there is a direct causal connection between the employment and the injury.

There is error, and the cause is remanded to the Superior Court with direction to set aside the judgment and enter a judgment dismissing the defendant's appeal and sustaining the award of the commissioner.

In this opinion the other judges concurred.