CLARA M. LABBE *v.* THE AMERICAN BRASS COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued January 2—decided March 6, 1946.

*William J. Larkin, 2d,* with whom was *William J. Larkin,* for the appellant (defendant).

*J. Warren Upson*, with whom, on the brief, were *William J. Secor, Jr.*, and *Margaret E. Connors*, for the appellee (plaintiff).

Ells, J. The sole question is whether the Superior Court erred in reversing the commissioner's conclusion denying compensation to the plaintiff. No motion was made to correct the finding of facts made by the commissioner and consequently the court's contrary conclusion was based wholly upon those facts.

The finding may be summarized as follows: Michaud worked in the defendant's tube mill located on the westerly side of South Main Street in Waterbury, on the night shift. His hours of employment were from 10:30 p.m. to 6:30 a.m. At about 10:10 or 10:15 o'clock on the evening of November 21, 1943, a guard saw him pass through the street entrance. Neither the guard nor any other person saw him thereafter. About a week later his remains were found in the soap tub hereinafter described.

The tube mill is approximately five hundred and thirty feet long and varies in width from two hundred and twenty-five feet to two hundred and seventy-five feet. It runs westerly from the South Main Street entrance. The hot soap or grease tub in which Michaud met his death is located in the southeasterly portion of the mill. The deceased worked in the northwest part in the inspecting, packing and shipping department. In approaching his department he would ordinarily proceed along a four-foot pathway painted on the floor, beginning at the entrance on South Main Street, thence running southerly about ninety feet, thence at a right angle, and continuing westerly to his department near the end of the building. The area north and south of the pathway is occupied by machinery, equipment, materials, and fin-

ished and unfinished products, and is used entirely for manufacturing purposes. The grease tub is located about sixty feet southerly of this pathway. It is about two hundred and forty feet from the South Main Street entrance, and three hundred and seventy feet from the bench where Michaud worked. The nearest toilet and washroom is about seventy feet from the grease tank and he would not have had to pass closer than sixty feet to the tank in going to it. Michaud was required to ring in his time card on a clock located in his department. The clock is five hundred feet from the grease tank. He did not ring in on the night in question, or thereafter. It was customary for him to hang his coat or jacket on a girder close to his work. The coat or jacket was not found there. The lights in the building were on, and were adequate.

The commissioner further found that "The deceased was never required, and had not at any time performed any work in connection with the operations involving the grease or soap tank . . . and particularly on the nights of November 21st, 22nd and 23rd, 1943 he had not been directed to go there for any purpose." Upon all the facts found, the commissioner concluded that Michaud was not engaged in the performance of his duties or doing anything in furtherance of his employer's business; that he was far removed from the place at which he performed his usual work; that there was nothing connected with that work which would bring him to the vicinity in which he met his death, and that he had never been ordered to go there; that his duties did not expose him to the danger of falling into this tank and that such a risk was not incidental to his employment; and that, therefore, his death did not arise out of and in the course of his employment. As we have already said, the Superior Court reached a contrary conclusion.

The sole assignment of error is that the court erred in holding that Michaud's death arose out of and in the course of his employment. It arose in the course of his employment if it occurred within the period of his employment, at a place where he might reasonably be and while he was reasonably fulfilling the duties of his employment, or engaged in doing something incidental to it. *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 308, 97 Atl. 320; *Ruckgaber* v. *Clark*, 131 Conn. 341, 343, 39 Atl. (2d) 881; *Waters* v. *Service Oil Co.*, 132 Conn. 388, 390, 44 Atl. (2d) 709. It arose out of the employment if it occurred in the course of the employment and resulted from a risk involved in the employment or incident to it or to the conditions under which it was to be performed. *Ruckgaber* v. *Clark*, supra, 344, and cases there cited. There must be a conjunction of the two requirements, "in the course of the employment" and "out of the employment," to permit compensation. The former relates to the time, place and circumstances of the accident, while the latter refers to the origin and cause of the accident. *Stakonis* v. *United Advertising Corporation*, 110 Conn. 384, 389, 148 Atl. 334.

We first consider whether the facts found support the conclusion that the injury arose in the course of the employment. The defendant concedes that it occurred within the period of the employment. See *Carter* v. *Rowe*, 92 Conn. 82, 101 Atl. 491; *Flanagan* v. *Webster & Webster*, 107 Conn. 502, 507, 142 Atl. 201. While the commissioner did not directly hold that it happened at a place where Michaud could not reasonably be, this is necessarily involved in his conclusion. The question is one of deviation from employment, where, in negligence cases involving the responsibility of an employer for the misconduct of his employee, the rule is well settled that, while devia-

tions may be so slight that they can be said as matter of law not to constitute a departure from employment, or so large that they can be said as matter of law to amount to such a departure, the question is ordinarily one of fact and the conclusion of the trier is final. *Neville* v. *Adorno,* 123 Conn. 395, 400, 195 Atl. 613. So many circumstances would have to be considered in the present case in determining whether the decedent could be held to have been in a place where he could reasonably be that the issue is necessarily one of fact which the trial court could not and we cannot decide. It is true that in *Iliff* v. *Norwalk Tire & Rubber Co.*, 127 Conn. 248, 16 Atl. (2d) 481, this court overruled the commissioner and the Superior Court in holding that the employee was where he could reasonably be, but the circumstances pointed much more clearly to that result than they do in the present case. The trial court apparently relied on *DeMartino* v. *New Haven,* 114 Conn. 519, 159 Atl. 345. That was a case where the commissioner's finding of liability was sustained. In the instant case, the commissioner found that the deceased was not engaged in the performance of his duties or doing anything in furtherance of his employer's business, or incidental to it, at the time of his death. In the DeMartino case, as here, there was no eyewitness of the accident. DeMartino was engaged in the pursuit of his employment, but no question was raised concerning the condition of liability we are now discussing.

In *Saunders* v. *New England Collapsible Tube Co.,* 95 Conn. 40, 110 Atl. 538, where the court ordered the commissioner's award to the plaintiff affirmed, an employee was killed during working hours by a descending elevator; she was accustomed to use that elevator in her employment; there was no evidence as to what she was actually engaged in doing at that

precise time; an award was sustained, the court saying (p. 43) that under these circumstances there was a natural presumption that she was injured in the course of and as a result of her employment. In *Reeves* v. *Dady Corporation*, 95 Conn. 627, 629, 113 Atl. 162, the employee was killed from a fall through an open door of the second story of a factory where he was working; we pointed out that, while his employment did not require, it permitted him to go to the open door, and we said (p. 629), citing the *Saunders* case, that if there had been no direct evidence of the cause of the injury it might have been inferred that he went there for some purpose connected with his employment; but, as it was found that he fell because of an attack of faintness due to the recital by a fellow employee of the details of a surgical operation, the commissioner's conclusion that there could be no recovery must be sustained. The principle stated in the *Saunders* case was also applied in *Judd* v. *Metropolitan Life Ins. Co.*, 111 Conn. 532, 536, 150 Atl. 514. Finally, it was applied in *Keeler* v. *Sears, Roebuck Co.*, 121 Conn. 56, 59, 183 Atl. 20. In that case, the precise question under discussion was the claim that under the evidence it was uncertain whether the employee was engaged at the time he was killed on his employer's business or his own; we said, "In the last analysis this was a disputed question of fact upon which the decision of the commissioner was final"; and we used the presumption to support the commissioner's conclusion that the employee was carrying out his employment. These cases show that the presumption is one resting on common experience and inherent probability which as such ceases to have force when countervailing evidence is produced, although the facts which gave rise to it remain in

the case. *O'Dea* v. *Amodeo*, 118 Conn. 58, 61, 170 Atl. 486.

The burden of proof was on the plaintiff. She must establish by competent evidence that the injury for which she seeks compensation arose out of and in the course of the employment. *Saunders* v. *New England Collapsible Tube Co.*, supra. The finding did not, and, under the strange circumstances of the case, could not, state what took the decedent out of his course, or how he came to get into the vat. The commissioner had the right to draw reasonable inferences, and upon the facts found the trial court could not hold illogical or unreasonable the conclusion that the injury did not arise out of and in the course of the employment. Even if the facts found would give rise to the "natural presumption" mentioned in *Saunders* v. *New England Collapsible Tube Co.*, supra, it would be a presumption of fact. The trial court was without power to override the commissioner in deciding that fact issue.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to enter judgment dismissing the appeal.

In this opinion the other judges concurred.