## STEPHEN KULIS *v.* JAMES MOLL

HOUSE, C. J., BOGDANSKI, LONGO, BARBER and MACDONALD, Js.

Argued October 13—decision released December 14, 1976

*Emanuel Margolis,* with whom, on the brief, was *John J. Graubard,* for the appellant (defendant).

*Vincent R. Falcone,* with whom, on the brief, was *William J. Cousins,* for the appellee (plaintiff).

MACDONALD, J. This is an appeal by an employer from a judgment of the Court of Common Pleas reversing a decision of the workmen's compensation

commissioner for the seventh district which dismissed for lack of jurisdiction an employee's claim for compensation. The sole issue presented is whether the commissioner was correct in dismissing the claim on the ground that the mere transportation of the plaintiff to the hospital by his employer, the defendant herein, did not constitute the furnishing of medical or surgical care within the meaning of § 31-294 of the General Statutes and, accordingly, that the notice of claim, made over one year after the date of injury, was untimely, requiring dismissal of the claim for want of jurisdiction. It is desirable to have in mind the relevant portions of § 31-294 which are set forth in some detail in the footnote[1] while considering the facts as hereinafter summarized from the commissioner's finding and as printed in the briefs.

---

[1] Section 31-294 of the General Statutes, entitled "Notice of injury and of claim for compensation," provides in relevant part: "Any employee who has sustained an injury in the course of his employment shall forthwith notify his employer, or some person representing him, of such injury; and, on his failure to give such notice, the commissioner may reduce the award of compensation proportionately to any prejudice which he finds the employer has sustained by reason of such failure; but the burden of proof with respect to such prejudice shall rest upon the employer. *No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident* or from the first manifestation of a sympton of the occupational disease, as the case may be, which caused the personal injury . . . . Such notice may be given to the employer or the commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting therefrom, or the date of the first manifestation of a symptom of the occupational disease and the nature of such disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. . . . *[I]f within said period of one year an employee has been furnished, for the injury with respect to which compensation is claimed, with medical or surgical care as hereafter provided in this section, no want of such notice of claim shall be a bar to the maintenance of proceedings* and

The plaintiff, Stephen Kulis, who had been engaged by the defendant, James Moll, to clean the outside of a house, was found lying on the ground at the foot of a ladder by Moll, who, at Kulis' request, drove him to the Stamford Hospital, where Moll requested hospital attendants to remove Kulis from Moll's automobile to the emergency room. Moll gave no information to the attendants, did not see Kulis at the hospital after his removal from the automobile, and there was no evidence that Moll made any payment for medical treatment rendered to Kulis. No written notice of claim was given to Moll until more than fifteen months after the date of injury.

in no case shall any defect or inaccuracy of such notice of claim be a bar to the maintenance of proceedings unless the employer shows that he was ignorant of the facts concerning such personal injury and was prejudiced by the defect or inaccuracy of such notice. . . . *The employer, as soon as he has knowledge of any such injury, shall provide a competent physician or surgeon to attend the injured employee and, in addition, shall furnish such medical and surgical aid or hospital or nursing service as such physician or surgeon deems reasonable or necessary. Such physician or surgeon shall be selected by the employee from an approved list of physicians and surgeons prepared by the commissioners, but, if such employee is unable to make the selection, the employer shall do so, subject to ratification by the employee or his next of kin,* provided, however, where the employer has a full-time staff physician or a physician is available on call, the initial treatment required immediately following the injury may be rendered by such physician, but the employee may thereafter select his own physician as provided by this chapter for any further treatment without prior approval of the commissioner. In the event of the failure of the employer promptly to provide such physician or surgeon or medical, surgical or hospital or nursing service, the injured employee may provide such physician or surgeon, selected from the approved list prepared by the commissioners, or medical, surgical or hospital or nursing service at the expense of the employer; or, at his option, the injured employee may refuse the medical, surgical and hospital or nursing service provided by his employer and provide the same at his own expense. . . ." (Emphasis added.)

Following a hearing before the commissioner limited to the preliminary issue of jurisdiction, the commissioner granted the motion of the defendant to dismiss the claim for want of jurisdiction after expressly finding that the transportation of the plaintiff to the hospital by the defendant did not constitute furnishing the plaintiff with "medical or surgical care" so as to qualify as an exception to the statutory requirement of giving written notice of the claim within one year of the injury. On appeal by the plaintiff, the Court of Common Pleas reached the opposite conclusion and, without in any way correcting the commissioner's finding of facts, reversed the decision appealed from by concluding that the defendant's act of driving the plaintiff to the hospital constituted an act of providing medical care and thus "brings the case within the jurisdictional requirements of . . . [General Statutes §] 31-294."

In his appeal, it is the basic claim of the defendant that his mere driving of the plaintiff to the hospital did not constitute the furnishing of medical or surgical care within the meaning of § 31-294 and he points to what he considers the all-important phrase "as hereafter provided in this section" which immediately follows the words "medical or surgical care" in the statute. He argues, in other words, that it is not simply the providing by the employer of any kind of medical or surgical care, but only of such medical or surgical care as is specifically outlined and described in the statute itself. An examination of the detailed provisions of § 31-294, as set forth in footnote 1, gives support to this argument. It requires, for example, that the employer "shall provide a competent physician or surgeon to attend the injured employee and, in addi-

tion, shall furnish such medical and surgical aid or hospital or nursing service as such physician or surgeon deems reasonable or necessary." It further requires that the physician or surgeon provided by the employer "shall be selected by the employee from an approved list of physicians and surgeons prepared by the commissioners" but that "if such employee is unable to make the selection, the employer shall do so, subject to ratification by the employee or his next of kin." The statute contains additional directives applying to the availability of a full-time staff physician or physician available on call by the employer to furnish immediate initial treatment, followed thereafter by the selection by the employee of his own physician "without prior approval by the commissioner."

It is apparent from the foregoing provisions, as well as from others disclosed by a reading of the entire statute, that the legislature intended to define and limit, with some degree of specificity, the acts of furnishing medical or surgical care by the employer which would relieve the employee of the statutory requirement to give written notice of his claim for compensation within one year from the date of the accident.

It is the contention of the plaintiff that the intent of the various exceptions listed in the statute is "to provide an injured employee with a remedy where formal written notice was not given but his employer had actual notice of the circumstances of his injury." He relies heavily upon the case of *Gesmudo* v. *Bush,* 133 Conn. 607, 53 A.2d 392, calling attention particularly to that portion of the opinion (p. 612) wherein this court stated: "The purpose of the notice is to inform the employer that an

injury has been suffered upon which a claim for compensation will or may be founded. . . . The exception is, no doubt, based upon the fact that if the employer furnishes medical treatment he must know that an injury has been suffered which at least may be the basis of such a claim." But the language immediately following the sentences quoted by the plaintiff clearly shows the difference between *Gesmundo* and the case under consideration when the court points out (p. 612): "The injury in this case [*Gesmundo*] was reported to the defendant's superintendent, and he sent the plaintiff to a doctor who attended injured employees of the defendant. . . . The examination by the doctor and the giving of instructions to the plaintiff constituted 'medical treatment' as those words are used in the statute. To 'furnish' means to 'provide' or 'supply.' Webster's New International Dictionary (2d Ed.). That the plaintiff saw fit to pay the doctor does not alter the situation; it is the fact that the defendant, through its superintendent, made provision for medical treatment that makes unnecessary the formal notice." Thus, the decision in *Gesmundo* was based upon the narrow ground that it was not necessary for the employer to pay for the treatment furnished by a physician selected by him in order to be held to have "furnished" such treatment within the meaning of the statute.

It is true, as argued by the plaintiff, that "[t]he Workmen's Compensation Act is liberally construed in favor of the employee . . . and it is to be interpreted with sufficient liberality to carry into effect the beneficent purpose contemplated in that act and not to defeat that purpose by narrow and technical definition." *Bahre* v. *Hogbloom,* 162 Conn. 549, 558, 295 A.2d 547. It is equally true, however, that

"[w]hen a statute creates an exception to a general rule, it is to be construed strictly and its language is not to be extended beyond its evident intent." *Bickart* v. *Sanditz*, 105 Conn. 766, 772, 136 A. 580; *Willoughby* v. *New Haven*, 123 Conn. 446, 454, 197 A. 85. In language as applicable to the statutory rights of the plaintiff here as to those established by the Connecticut statute pertaining to chattel mortgages there under consideration, the United States Court of Appeals for the Second Circuit observed in the case of *In re New Idea Yankee Togs, Inc.*, 339 F.2d 544, 546: "The chattel mortgage is a creature of statute and the technical requirements of the statute cannot be altered or mitigated by importing and applying equitable principles which have attached to real estate mortgages," especially considering "the absence of a suggestion of legislative intention."

In *United Aircraft Corporation* v. *Fusari*, 163 Conn. 401, 311 A.2d 65, in considering the Connecticut Unemployment Compensation Act, we stated (pp. 410–11): "The statutory language in question is clear and describes a specifically delineated procedure which admits of no ambiguities. We cannot 'search out some intent which we may believe the legislature actually had and give effect to it, . . . we are confined to the intention which is expressed in the words it has used.' *Connecticut Light & Power Co.* v. *Walsh*, 134 Conn. 295, 301, 57 A.2d 128. The intention of the legislature, expressed in the language it uses, is the controlling factor and the application of common sense to the language is not to be excluded. *Knoll* v. *Kelley*, 142 Conn. 592, 594, 115 A.2d 678. There is no room for statutory construction where the legislative intent is clear; *Hartford Hospital* v. *Hartford*, 160 Conn. 370, 376,

279 A.2d 561; and the legislature clearly expressed what it intended to mean at the time the legislation was adopted. There is no ambiguity. The scheme and plan of the Unemployment Compensation Act is plain. The entire enactment must be examined and its parts reconciled and made operative so far as possible."

To adopt the interpretation of § 31-294 given by the trial court and urged by the plaintiff would, in effect, delete from the statute the qualifying phrase "as hereafter provided in this section." To do so would violate what we frequently have referred to as an "elementary principle of statutory construction that a statute should be construed so that '[n]o word in a statute should be treated as superfluous . . . or insignificant." *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 101, 291 A.2d 721; *Archibald* v. *Sullivan,* 152 Conn. 663, 668, 211 A.2d 692; *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 126, 55 A.2d 732. We recently referred to this principle of construction as "a commonplace." *Levin-Townsend Computer Corporation* v. *Hartford,* 166 Conn. 405, 409, 349 A.2d 853. Here the legislature created a specifically defined exception to the one-year limitation period which must be enforced in accordance with its terms as they appear on the face of the statute.

The need for a specific definition of the exception such as the legislature has provided here is apparent from the facts before us. In the ordinary case the employer, before furnishing medical or surgical care, has some opportunity to investigate the facts of the accident or illness. Here, there was no evidence to indicate whether the plaintiff, when found on the ground, had suffered a sudden illness, an

accidental fall or even an external assault before his employer, the defendant, responding to his humane instincts, drove the plaintiff to the hospital. It was not until receipt of the notice of claim fifteen months later that the defendant had any indication of his potential exposure, at which time much of his opportunity for investigation had passed. By the same token, the plaintiff, under the circumstances, had no reason to rely upon the conduct of his employer as an admission that he was entitled to compensation.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion HOUSE, C. J., LONGO and BARBER, Js., concurred. BOGDANSKI, J., dissented.