JOYCE A. PHIPPS ET AL. *v.* BERNICE C. NIEJADLIK ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued May 15—decision released July 18, 1978

*Richard J. Lynch,* assistant attorney general, with whom were *Stanley K. Peck,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellants (defendants).

*Sue L. Wise,* with whom, on the brief, was *Michael Avery,* for the appellees (plaintiffs).

*William S. Zeman* and *Joel M. Ellis* filed a brief as amici curiae.

PETERS, J. The plaintiffs, Joyce A. Phipps, Keith M. Phipps and Craig E. Phipps brought an action in the Superior Court in New Haven County for a writ of mandamus to direct the chairperson and members of the board of trustees for state colleges to recommend and the attorney general to approve certain payments under § 5-144 of the General Statutes. The defendants filed an answer and asserted two special defenses. Upon stipulation of the relevant facts, the case was tried to the court, and summary judgment was rendered for the plaintiffs. The defendants have appealed.

The appeal raises two major issues. One concerns the effect of § 5-144, in particular the meaning to be attached to its language providing payment in the event that "any state employee sustains an injury while acting within the scope of his employment." The second concerns the availability of mandamus as a remedy in the event that payment has been improperly withheld.

The facts as stipulated demonstrate the following: Robert W. Phipps was a professor of history at Southern Connecticut State College. On the evening of April 24, 1972, he was teaching a class at the college when he collapsed with shortness of breath and chest pains. Later that evening, he was pronounced dead at Yale-New Haven Hospital. The cause of death was certified as an acute myocardial infarction. At the time of death, Phipps was a thirty-seven-year-old male with a history of hypertension, who weighed 240 pounds and was five feet, ten inches tall. Phipps was survived by his widow, Joyce, and by two minor children, Keith and Craig, who are the plaintiffs in this case. The plaintiffs have made claims to the defendant trustees for sums alleged to be due them under § 5-144 of the General Statutes, but such payments were not approved by the trustees. The plaintiffs do not claim and cannot prove the existence of any causal connection between Phipps' employment and the sustaining of the acute myocardial infarction.

The central issue on this appeal is the applicability of § 5-144 to a state employee who sustains a fatal heart attack while a state employee, fulfilling his duties at the place of his employment, without causal connection between his employment and his injury. The pertinent part of § 5-144 provides: "If any state employee *sustains an injury while acting within the scope of his employment,* which injury is not the result of his own wilful or wanton act, and dies as a result of such injury, and a spouse and a dependent child or children under eighteen years of age survive him, the comptroller, upon the recommendation of the appointing authority, and with the approval of the attorney general, shall draw his order on the treasurer for the sum

of seven thousand five hundred dollars, payable in equal monthly instalments over a period of not less than five years to such employee's spouse . . . and . . . monthly payments of twenty dollars for each dependent child under eighteen years of age, payable . . . until such child or children reach eighteen years of age." (Emphasis added.) The section has not previously been interpreted by this court.

The applicability of § 5-144 to a heart attack depends in the first instance on a determination of whether such an occurrence may qualify as an "injury." In related cases arising under the Workmen's Compensation Act, §§ 31-275 through 31-355 of the General Statutes, this court has repeatedly held that a heart attack may be an "injury" that entitles a claimant to compensation, if the heart attack is causally precipitated by some job-related event. *Stier* v. *Derby,* 119 Conn. 44, 52, 174 A. 332; *Richardson* v. *New Haven,* 114 Conn. 389, 390, 158 A. 886; *Biederzycki* v. *Farrel Foundry & Machine Co.,* 103 Conn. 701, 707–708, 131 A. 739. In a recent case under § 5-169 (b) of the General Statutes, which provides disability benefits for "injury received while in the performance of his duty as a state employee," this court assumed without discussion that a heart attack could be an injury. *Tremblay* v. *Connecticut State Employees' Retirement Commission,* 170 Conn. 410, 414, 365 A.2d 1125. The court noted in *Tremblay* that § 5-145a of the General Statutes extended to certain employees, upon certain preconditions, a presumption that an impairment of health caused by hypertension or heart disease had been suffered in the performance of duty. The reach of § 5-145a and its attendant presumptive structure all depend upon the assumption that a heart attack is not automatically disqual-

ified from the category of "injury." In light of this unbroken line of authority, the trial court was therefore correct in its holding that Phipps' heart attack could be an "injury" within § 5-144.

The applicability of § 5-144 to the case before us depends further upon an interpretation of "within the scope of his employment." On this issue, the trial court concluded that "within the scope of employment" has the same meaning as "within the course of employment." The court went on to define this latter phrase to cover an injury when it takes place (a) within the period of employment, (b) at a place where the employee may reasonably be, and (c) while he is reasonably fulfilling the duties of the employment or doing something incident to it. In response to the stipulated absence of causal connection between Phipps' injury and his employment, the court expressly concluded that causal connection between injury and employment was not required by § 5-144. The trial court therefore determined that the plaintiffs were entitled to recover.

In describing the nexus of relationship between employment and benefits, the legislature has from time to time used various qualifying phrases. Thus, in chapter 65 of the General Statutes, in which § 5-144 is located, several sections, specifically §§ 5-142, 5-142a, 5-145, 5-145a, 5-145b, and 5-145c, all refer to injuries or conditions suffered "in the performance of . . . duty." Section 5-143, entitled "Applicability of workmen's compensation act [to state employees]," perhaps requires more, namely an injury "arising out of and in the course of his employment," but §§ 5-146–5-151, providing allowances for survivors of state police officers, conspicuously require less, that is death "before retirement from state service from any cause."

Thus, in context, it is clear that § 5-144's reference to "scope of employment" requires a showing of something in addition to death during state employment. While § 5-146 is a form of life insurance, § 5-144 is not. In its historical evolution from § 47g of the 1943 Supplement to the General Statutes, § 5-144 has always required some relationship of injury to duties.[1]

In fact, "in the performance of duty" is the most useful linguistic point of reference for determining what is meant by "scope of employment" in § 5-144. In § 47g of the 1943 Supplement, the progenitor of § 5-144, benefits were provided for a class then constricted (and subsequently enlarged to include all state employees) on the condition that the employee "sustains an injury . . . in the performance of his duty." There is every reason to believe that the legislature viewed "scope of employment" and "in the performance of duty" as interchangeable phrases. In § 5-145, the section immediately following the section now before this court, the legislature provides a procedure for notification of the attorney general when state employees are injured. The duty to notify is located in "[e]ach appointing authority"; only § 5-144, in all of the balance of chapter 65, refers to an "appointing authority." The duty to notify, which § 5-145 thus imposes upon § 5-144

[1] The present § 5-144 of the General Statutes is historically derived from Public Act No. 289 of the January, 1943, Session, codified as § 47g of the 1943 Supplement to the General Statutes. Entitled "Death benefits for state policemen," the latter section bestowed benefits "[i]f any member of the state police department sustains an injury while making an arrest or while in the actual performance of police duties, or as a result of being assaulted in the performance of his duty. . . ." Numerous subsequent revisions of § 47g served to expand the classes of beneficiaries. See Rev. 1949, § 421; Sup. 1953, § 143c; Sup. 1955, § 186d; Sup. Nov. 1955, § N5; Public Acts 1957, No. 122; Public Acts 1965, No. 466.

incidents, is triggered in § 5-145 by "the injury, or death resulting from an injury, of any employee in the state service, which injury was incurred in the performance of his duties."

Interpretation of "scope of employment" as "performance of duty" is furthermore required if § 5-144 is to be assimilated in any structural way to the legislation that deals specifically with heart disease or hypertension. Concededly, the sections that provide benefits for heart disease, §§ 5-145a, 5-145b, and 5-145c, all depend upon two sets of preconditions that Phipps cannot meet. They require employment in designated categories of work legislatively determined to be especially stressful; university teaching is not within the designated categories. Furthermore they require a "clean" physical examination at the time of employment, showing no evidence of heart disease; no such examination was reported in the case before us. When the preconditions are met, their combined effect is to create a presumption that subsequent heart disease has been "suffered in the performance of his duty." The touchstone continues to be injury in the performance of duty; only its proof is, on occasion, facilitated. Recently, this court examined the relationship between those sections and § 5-169 (b), which provides disability retirement benefits. Tremblay v. Connecticut State Employees' Retirement Commission, 170 Conn. 410, 414, 365 A.2d 1125. The court in Tremblay held that an employee could not automatically invoke the statutory presumption of § 5-145a when a pre-employment physical exam gave some indication of heart disease. Id., 415. In the absence of a dispositive physical examination, the retirement commission was affirmed in its finding that the evidence

before it did not prove that the employee's heart attack was sustained in the performance of his duties as a state employee. Id., 414–15. The evidence in *Tremblay,* other than the physical examination, described certain incidents[2] of his employment that arguably might have precipitated a heart attack.

The holding in *Tremblay* carries a clear implication for this case. It would be anomalous, to say the least, for this court to hold that employees like Phipps should be entitled to benefits under § 5-144 that are less rigorously defined than those under §§ 5-145a–5-145c. If specially designated employees must still demonstrate injury in the performance of duty, so must the residual class of general state employees. All of the evidentiary discussion in *Tremblay* assumes that performance of duty involves some causal connection between injury and employment.

It may well be true, as the plaintiffs have argued, that "scope of employment" in tort cases involving vicarious liability of master and servant may today involve few qualifying conditions. We are not persuaded that tort law serves the same purposes, or should be governed by the same standards, that determine the reach of employee disability or death benefits. In the more closely analogous field of private accident insurance, heart attacks have been viewed as compensable injuries only when their incidence could in some causal way be related to

---

[2] During the course of Tremblay's employment, two emergencies occurred. "The plaintiff was called to subdue an employee who was threatening his supervisor with a knife, and the plaintiff was required to minister to a heart attack victim." *Tremblay* v. *Connecticut State Employees' Retirement Commission,* 170 Conn. 410, 411, 365 A.2d 1125.

special overexertion or strain. See 10 Couch, Insurance (2d Ed.) § 41:39 and cases cited. Those cases support the proposition that "scope of employment" means "in the performance of duty" and that each requires some showing of causality.

We hold, therefore, that § 5-144 covers an injury, including a heart attack, only (a) when it occurs within the period of the employment and (b) when it is in some way causally connected to the employee's performance of the duties of his employment. Since the parties stipulated the absence of any causal connection whatsoever between Professor Phipps' death and his employment, the trial court was in error in concluding that the requirements of § 5-144 had been met.

Since the plaintiffs have no entitlement to payments under § 5-144, we need not consider the extent to which mandamus is a proper remedy for payments improperly withheld under that section. Whether and under what circumstances an appointing authority's recommendation of payment is mandatory or discretionary is not an issue so free from doubt that it should now be prejudged. See *Tremblay* v. *Connecticut State Employees' Retirement Commission,* supra, 415–17, and *Light* v. *Board of Education,* 170 Conn. 35, 37–41, 364 A.2d 229.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion COTTER, C. J., LOISELLE and LONGO, Js., concurred.

BOGDANSKI, J. (dissenting). "Within the scope of employment" or "in the course of employment" or "in the performance of duty" cannot be equated

with "arising out of the employment" as the majority opinion holds. "Within the scope of employment" and "arising out of the employment" call for substantially different standards: the former requiring only a showing that the injury occurred within the course of or scope of employment; the latter imposing a further burden of showing a causal connection between the injury and some risk involved in the employment.

This court has repeatedly differentiated the two terms. An injury arises in the course of employment when it takes place (a) within the period of employment, (b) at a place where the employee may reasonably be, and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it. An injury is said to arise out of the employment, on the other hand, when it (a) occurs in the course of employment and (b) is the result of a risk involved in the employment or incident to it or to the conditions under which it is required to be performed. *Dombach* v. *Olkon Corporation,* 163 Conn. 216, 221–22, 302 A.2d 270; *Farnham* v. *Labutis,* 147 Conn. 267, 269, 160 A.2d 120; *Labbe* v. *American Brass Co.,* 132 Conn. 606, 609, 46 A.2d 339; *Iliff* v. *Norwalk Tire & Rubber Co.,* 127 Conn. 248, 249, 16 A.2d 481; *Ryerson* v. *A. E. Bounty Co.,* 107 Conn. 370, 372, 140 A. 728.

Section 5-144 of the General Statutes, a part of chapter 65, provides death benefits to the dependents of a state employee who suffers an injury resulting in death provided that certain conditions enumerated in the statute are met. Those conditions are: (1) that the injury be sustained while acting within the scope of employment; (2) that

the injury not result from the employee's wilful or wanton act; (3) that the employee die as a result of the injury; and (4) that the employee be survived by a spouse, a dependent child or a dependent parent. The statute by its own terms makes its benefits payable if the injury occurs "within the scope of his employment." Section 5-144, therefore, must be differentiated from traditional workmen's compensation statutes where the injury must be shown to arise out of the employment and from some risk involved therein.

My colleagues construe § 5-144 as requiring not only a showing that the injury occurred within the scope of employment but also a showing that the injury arose out of the employment as is required in workmen's compensation statutes. There is nothing in the statute to suggest such an additional requirement. It is fundamental that the meaning or intent of a statute is to be ascertained from the language of the statute itself. Where the language is clear and unambiguous, as here, there is no need for statutory construction. *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375–76, 279 A.2d 561; *Little* v. *Ives,* 158 Conn. 452, 455, 262 A.2d 174; *State ex rel. Cooley* v. *Kegley,* 143 Conn. 679, 683, 124 A.2d 898. Courts are not permitted to read into a statute what is not there. " 'We cannot "search out some intent which we may believe the legislature actually had and give effect to it, . . . we are confined to the intention which is expressed in the words it has used." *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A.2d 128.' " *Kulis* v. *Moll,* 172 Conn. 104, 110, 374 A.2d 133, quoting from *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 410–11, 311 A.2d 65; *Madison Education Assn.* v. *Madison,* 174 Conn. 189, 192, 384 A.2d 361.

Only one statute in all of chapter 65 refers to causation: section 5-143 places all state employees under the workmen's compensation statutes for any injury "arising out of and in the course of . . . employment." If the legislature had intended to require traditional workmen's compensation causation in § 5-144 as it required in § 5-143, it could easily have done so by simply adding the term "arising out of the employment" to the statute.

It should be noted that §§ 5-145a, 5-145b and 5-145c create a presumption in favor of state employees in certain stressful occupations. Those statutes create a presumption to the effect that any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability or death is suffered *in the performance* of duty. Thus, the employee seeking compensation under the statutory provisions of chapter 65 is aided by the presumption that the injury occurred in the service of the state rather than outside his employment. The statutes, however, prohibit that presumption from applying to workmen's compensation statutes.

In essence, chapter 65 provides protection and benefits for state employees outside of, and in addition to, those contained within the traditional workmen's compensation framework and the causal requirement contained therein. It cannot be questioned that the legislature can confer additional benefits to state employees beyond workmen's compensation benefits, and in so doing, can dispense with the requirement of traditional causation.

The parties stipulated that at the time of the decedent's injury, which resulted in death, the decedent was at the college where he was employed;

that he was lecturing at a scheduled class which was a part of his regularly assigned duties; and that a spouse and dependent children survived him. It follows that the decedent was acting within the scope of his employment as required by the statute when he suffered the injury and death. All conditions imposed by the statute have been fulfilled.

I would, therefore, find no error on the part of the trial court.