[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The plaintiff has filed an administrative appeal of the decision of the defendant Clinton Inland Wetland and Conservation Commission (Commission), which 1) found that the plaintiff had constructed a pond and filled wetlands on his property without proper approval and 2) required the plaintiff to submit a wetlands boundary verification and an application for regulated CT Page 890 activity. The Commissioner of Environmental Protection, who has the authority to supervise the administration and enforcement of the Connecticut Inland Wetlands and Watercourses Act, Conn. Gen. Stat. §§ 22a-36 to 22a-45, is also a defendant. Trial and argument of the administrative appeal took place in this Court on December 1, 1998. For the reasons stated below, the Court sustains the decision of the Commission and dismisses the plaintiff's appeal.
BACKGROUND OF THE CASE
The administrative record reveals the following background of the case. On August 26, 1996, Barbara B. Swan, the Clinton Zoning and Wetlands Enforcement Officer, first sent the plaintiff notice of violating the town wetlands regulations by constructing a pond without a permit on his property, which is located at 21 Brush Hill Road in Clinton. The Commission conducted a series of hearings and, in November, 1996, issued an order requiring the plaintiff to obtain a permit prior to conducting regulated wetlands activities. Swan then issued an additional order requiring the plaintiff to submit applications to verify his wetlands boundaries and to approve construction of the pond.
On March 21, 1997, Swan issued a new order, apparently because of concerns about procedural irregularities in the first enforcement proceeding. The new order stated that the Commission had evidence that the plaintiff had constructed a pond and filled wetlands on his property without the proper permit. The order demanded that the plaintiff remedy existing violations on the property by submitting a set of plans and a proper application.
On April 1, 1997, a public hearing took place regarding the order issued in March, 1997. At the hearing, the plaintiff introduced his own affidavit in which he alleged that the pond was in existence when he purchased the property in February, 1974, and that he had removed some accumulated brush and sticks from the pond prior to June 27, 1974, which was the day the Clinton Inland Wetlands Regulations came into effect. The plaintiff presented an affidavit and the live testimony of Herman Pudeler, who owned the property from the 1930's to the 1970's. Pudeler averred and testified that the pond had existed on this property for the entire time of his ownership and that the plaintiff, upon first acquiring the property, had simply cleaned out debris and landscaped around the perimeter of the pond. Pudeler added, however, that while he owned the property there CT Page 891 were bogs in the pond from which grew bushes, as well as trees and brush around the pond, all of which made the pond difficult to see.
When the hearing reconvened on May 6, 1997, the plaintiff's daughter, Lisa Corone, testified that the pond was on the property when the family moved there in 1974 and that there had been no dredging or digging of the pond since that time. The plaintiff also introduced the report of Dr. Michael W. Lefor, an Assistant Professor of Geography at the University of Connecticut, who reviewed aerial photographs, maps, and other background information concerning the case. Dr. Lefor concluded, among other things, that "there are indications that [the pond] could have been constructed five or more years before 1986."
The Commission, over the course of the two hearings, examined actual aerial photographs of the subject property taken in 1975, 1980, and 1990.[1] The record also includes a 1972 survey map of the property. Although this map is hand-drawn and was apparently submitted for the purpose of obtaining a well drilling permit rather than documenting wetlands, it does show a boundary line for the approximate edge of a marsh and does not show a pond.
In addition to the report of Dr. Lefor, the Commission had before it reports from several other specialists in relevant fields. Chief among these was the report of Douglas Hoskins III, an environmental analyst with the Inland Water Resources Division of the state Department of Environmental Protection (DEP). At the request of the town, Hoskins examined the 1975, 1980, 1986, 1990 aerial photos of the subject property.[2] Hoskins first reported that the 1975 photograph shows a "single family home situated on the southern portion of the lot with wetlands covering approximately 50,000 square feet of the rear (northerly) portion of the property." Hoskins then made the following observation:
The 1980 photograph reveals that a pond had been excavated within this wetland area in the mid-western portion of the property. Visible just to the east of the pond in the wetland area were piles of what are most likely "dredge" material that had been removed in order to create the pond just to the east of the pond, clear-cutting of vegetation within most of this area, and an outbuilding is now present on the mid-eastern CT Page 892 portion of the lot.
Hoskins added that the 1986 and 1990 photos showed further clear-cutting of wetland vegetation. In conclusion, Hoskins stated that "most if not all of the approximately 50,000 square feet of wetlands present in the 1975 photograph, not now part of the pond, has been directly impacted by placement of fill material."[3]
Also before the Commission was a September, 1995 report from a private environmental firm that conducted a subsurface remedial investigation on the property at the plaintiff's request. The investigation revealed, among other things, the presence of buried construction debris in a test pit located in the northerly portion of the property. Based on the scale of the map, this test pit is located approximately 120 feet from the western edge of the pond. After reviewing this report and other information about the property for the purpose of investigating allegations of hazardous waste disposal on the property, John R. Hirschfeld, another DEP environmental analyst, concluded in April, 1997 that "[o]nsite wetlands have been filled with solid waste, including construction debris."[4]
Based upon this evidence, the Commission, on May 6, 1997, decided that the March, 1997 "violation order" would remain in effect. In so finding, the Commission did not detail its reasons. The Commission also decided that, as a remedial measure, the plaintiff was required to submit a "Boundary/Verification Application for all wetlands on the property as well as an Application for construction of a pond and filling of wetlands." This appeal followed.
DISCUSSION I. A. Aggrievement
As an initial matter in an administrative appeal, the plaintiff must establish that he is aggrieved by the decision of the administrative agency. See Northeast Parking, Inc. v.Planning Zoning Commission, 47 Conn. App. 284, 287 (1997),cert. denied, 243 Conn. 969 (1998); Conn. Gen. Stat. §§ 8-8(b); 22a-43(a). The plaintiff testified in court that he has owned the subject property during the entire course of CT Page 893 proceedings of the Commission and that the pond in question is located on his property. There was no dispute of this testimony. The Court finds that the plaintiff has proven aggrievement. SeeHuck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530
(1987).
 B. Timeliness and Service of Process
General Statutes § 8-8(b) requires that an appeal from a decision of a commission "shall be commenced by service of process [on the chairperson of the commission and the clerk of the municipality] within fifteen days from the date the notice of the decision was published." Conn. Gen. Stat. § 8-8(b). Seealso id. §§ 8-8(e), (f) (concerning service of process). Additionally, General Statutes § 22a-43 provides that "[n]otice of such appeal shall be served upon the inland wetlands agency and the commissioner [of environmental protection]." Conn. Gen. Stat. § 22a-43.
The record reveals that the Commission published notice of its decision in the Clinton Recorder newspaper on May 17, 1997. On May 30, 1997, the plaintiff effectuated service of this appeal on the chairperson of the Commission, the town clerk, and the Commissioner of Environmental Protection. Because the plaintiff served the required officials within the relevant fifteen day period, the Court finds that service of this appeal was proper and timely.
 II. A.
The plaintiff makes essentially four arguments for reversal of the Commission. The first is that the Commission exceeded its statutory authority in ordering the plaintiff to submit a wetlands boundary and permit application. The plaintiff relies on General Statutes § 22a-44(a), which provides that a wetlands agency, upon finding a violation of the statutes or regulations, may issue a written order to the violator "to cease immediately such activity or to correct such facility or condition." The plaintiff contends that, while the statute would authorize the Commission to order him to fill in a pond created without a required application, which the Commission did not do here, the statute does not authorize the Commission affirmatively to order him to submit the initial application. CT Page 894
The Court finds this argument illogical. The greater power to order cessation of the improper activity surely includes the lesser power to order submission of further information to determine if the activity is indeed improper. Further, the statute authorizes a wetlands agency to "correct" the deficiency. If the deficiency is the failure to submit an application for regulated activity, which is the case here, then one way to "correct" the deficiency is to order the submission of the missing application.
 B.
The plaintiff's second argument is that there was insufficient evidence to support the Commission's conclusion that the plaintiff created a pond and filled in wetlands after June 27, 1994, when the Clinton wetland regulations came into effect. In challenging administrative agency action, the plaintiff has the burden of proving that substantial evidence does not exist in the record as a whole to support the agency's decision. SeeSamperi v. Inland Wetlands Agency, 226 Conn. 579, 587 (1993). The plaintiff must do more than simply show that another decision maker such as the trial court might have reached a different conclusion. This Court does not retry the case de novo. Id.
In applying the substantial evidence standard, this Court must bear in mind that the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. Id. at 588. An administrative agency is not required to believe any witness, even an expert,see Huck, 203 Conn. at 542, although an agency must not disregard the only expert evidence on an issue when agency members lack their own expertise or knowledge. See Tanner v. ConservationCommission, 15 Conn. App. 336, 341 (1988). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Spero v.Zoning Board of Appeals, 217 Conn. 435, 440 (1991).
"Substantial evidence" means something less than the weight of the evidence. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's decision from being supported by substantial evidence.See Samperi, 226 Conn. at 588. "The substantial evidence standard requires enough evidence to justify, if the trial were to a jury, CT Page 895 a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." Kaufman v. ZoningCommission, 232 Conn. 122, 151 (1995) (internal quotations omitted). Further, it is improper for a reviewing court to reverse an agency decision simply because an agency failed to state its reason for its decision on the record. Rather, the reviewing court must "search the record of the hearing before that commission to determine if there is an adequate basis for its decision." Samperi, 226 Conn. at 588-89.
Although the plaintiff presented substantial evidence that the creation of the pond predated the regulations, the Commission, as stated, was not required to accept the plaintiff's evidence. See Huck v. Inland Wetlands and Watercourses Agency,supra. Applying the standards stated above, the Court finds substantial evidence to support the Commission's contrary conclusion that plaintiff created the pond and filled in wetlands after the regulations took effect. The key piece of evidence was the Hoskins report. It is true that the Hoskins report does not explicitly say that, in the opinion of the author, the pond was created between 1975 and 1980. Nevertheless, the report clearly implies this conclusion by comparing the 1975 photograph, which does not show a pond, and the 1980 photograph, which revealed "that a pond had been excavated within th[e] wetland area." The report also documents the fact that from 1980 on, and not in 1975, the wetlands "had been directly impacted" by the placement of fill material that had been removed in order to create the pond.
The Commission had several items of evidence that corroborated the Hoskins report. First, the Commission had the actual aerial photos to examine. In addition, the Commission had Dr. Lefor's report. Although the report's conclusion that the pond "could have been constructed five or more years before 1986" arguably supports the plaintiff's position that the pond was created before 1975, Dr. Lefor also stated that, in a broad sense, he agreed with the opinion of Mr. Hoskins, thus suggesting that "five or more years before 1986" meant between 1975 and 1980. Finally, the Commission had the subsurface remedial investigation and the Hirschfeld letter stating that "onsite wetlands have been filled with solid waste, including construction debris." Although this material does not state when the wetlands were filled, it does, when combined with the photographs and the Hoskins report, support the Commission's finding that the plaintiff filled wetlands on his property. Thus CT Page 896 there was substantial evidence to support the Commission's decision.
 C.
The plaintiff next renews a claim made before the Commission, and implicitly rejected by it, that his actions are exempt from wetlands regulation pursuant to General Statutes §22a-40(a)(4). Although the plaintiff maintains that he merely removed accumulated brush and sticks from the pond, and that this activity is exempt, the Commission did not accept the plaintiff's view of the facts. This Court has found substantial evidence to support the Commission's decision in this regard. Thus, the only question remaining is whether what the Commission found to have happened, namely that the plaintiff created a pond and filled in wetlands, qualifies for an exemption.
The general rule, embodied in General Statutes § 22a-42a(c), is that a "regulated activity" conducted upon any inland wetland requires a permit. General Statutes § 22a-38(13) defines "regulated activity" to mean "any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, but [it] shall not include the specified activities in section 22a-40." Section 22a-40(a)(4), however, provides an exemption from the permit requirement for "[u]ses incidental to the enjoyment and maintenance of residential property . . . [including] maintenance of existing structures and landscaping but . . . not . . removal or deposition of significant amounts of material from or onto a wetland or watercourse." Conn. Gen. Stat. § 22a-40(a)(4). The Commission and this Court must construe this exemption strictly, because it is an exception to the general purpose of the wetlands statutes to protect and preserve the "indispensable and irreplaceable but fragile natural resource" of inland wetlands. Conn. Gen. Stat. § 22a-36.See Samperi v. Inland Wetlands Agency, 226 Conn. at 591; Kulis v.Moll, 172 Conn. 104, 110 (1976).
Construing the exemption strictly, a reasonable fact finder surely need not find that creation of a pond and the placement of fill material having a direct impact on 50,000 square feet of wetlands is a use merely "incidental to the enjoyment and maintenance of residential property." On the contrary, this sort of activity obviously involves "removal and deposition of CT Page 897 significant amounts of material from or onto a wetlands," Conn. Gen. Stat. § 22a-40(a)(4), thus making it a "regulated activity" pursuant to General Statutes § 22a-38(13). The Commission thus acted properly in ordering the plaintiff to submit an application for regulated activity.
 D.
The plaintiff's final claim is that the Commission prejudged the plaintiff based on the first enforcement proceedings in 1996 and considered evidence outside the record. There is unquestionably a history of litigation between the parties involved in this case. See Lewis v. Planning Zoning Commission,49 Conn. App. 684 (1998); Lewis v. Swan, 49 Conn. 669 (1998). But "[t]he law does not require that members of zoning commissions must have no opinion concerning the proper development of their communities." Cioffeletti v. Planning Zoning Commission,209 Conn. 544, 555 (1989) (internal quotations omitted). More specifically, the Court's review of the administrative record does not disclose any improper conduct by the Commission. Nor did the plaintiff present any additional evidence of improper conduct in Court. See id. at 555-56 n. 3. All the evidence considered by the Commission is in the administrative record except for the original photographs, and the plaintiff had access to the photos at the time of the hearing. Furthermore, this Court has found that this record contains substantial evidence to support the Commission's decision, thus supplying a legitimate basis for the Commission's actions. Finally, the fact that the Commission abandoned the first enforcement proceeding and conducted a second, albeit similar one hardly demonstrates that the Commission was prejudging the plaintiff. Rather, the Commission's approach demonstrates the opposite conclusion that the Commission found some infirmities in its first proceeding and was willing to give the plaintiff a second chance. Based on these considerations, the Court rejects the plaintiff's claims of improper conduct by the Commission.
CONCLUSION
For the foregoing reasons, this Court sustains the decision of the Commission and dismisses the plaintiff's appeal.
It is so ordered.
CARL J. SCHUMAN CT Page 898 Judge, Superior Court